76  913
93  603
76   913
106    5

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

The Shenandoah Valley Railroad Co. v. J. T. Griffith
ET ALS.

The Pennsylvania Railroad Co. v. Same.

John Donaghue & Bro. ET ALS. v. Central Improvement
Co. ET ALS.

Adams, Hamner & Co. ET ALS. v. The Shenandoah
Valley Railroad Co. ET ALS.

November 16, 1882.

1. RAILROADS—*Unpaid subscriptions—Liens on stock—Construction of statute.*—Code 1873, ch. 57, gives a railroad company no lien on paid-up shares to secure payment of unpaid subscriptions for other shares; and the sale of such paid-up shares for such purpose by the company, is unauthorized by the statute, and is a nullity.

2. IDEM—*Stock—Attachment.*—The shares of a stockholder in a railroad company are liable to attachment; and by virtue thereof, the attaching creditor acquires a claim superior to that of a subsequent *bona fide* purchaser of those shares for value without notice of the attachment. *C. & O. R. R. Co.* v. *Paine & Co.,* 29 Gratt.

3. IDEM—*Return—Appellate court.*—An objection to a defective return of the service of process, made here for the first time, is too late.

QUÆRE: Can process against a corporation be served on the appropriate officer thereof according to Code 1873, ch. 166, § 6, and ch. 163, § 1; that is, not only on that officer, *in propria persona,* but on his wife, or any member of his family, as a summons or notice may be served.

4. PRACTICE IN CHANCERY—*Amended bill—Departure—Demurrer—Case here.*—G attaches the shares of the S V R Co. stock, owned by the C I Co. Later, G files an amended bill for himself and other creditors of the C I Co., averring that as a corporation it had been dissolved by the sale of its franchises under execution, and that first mortgage bonds of the S V R Co. had been assigned to the C I Co., and by it transferred to the P R Co., and praying that the latter company be made a party and

required to disclose what amount of said bonds it held, how and from whom they were acquired, and to maintain or relinquish its claim to those bonds. Afterwards those creditors also filed a petition alleging that the C I Co. had been dissolved by reason of its insolvency and the sale of its charter rights under executions, and claiming that the assets of that company be subjected to the payment *pro rata* of the claims of all its creditors. On demurrer—

HELD:

 1. The amended bill and petition make a new case and an unallowable departure from the case made by the original bill, and should be dismissed. As to what is "a new case," see *Belton* v. *Apperson*, 26 Gratt. and *Hurt* v. *Jones and Wife*, 1 Matthews, 341.

 2. Insolvency, *per se*, does not work a dissolution of a corporation.

5. IDEM—*Res judicata.*—After the amended bill, but before the petition was filed, to which A H & Co., as creditors of the C I Co., were parties, they brought their independent suit, setting out the same matters as were set out in the amended bill and petition, and making the same parties. After the decree dismissing the amended bill and petition, the S V R Co. filed its plea of *res judicata*, which was sustained by the court below. On appeal—

HELD:

 1. It has long been settled that a judgment of a court of competent jurisdiction directly on the point, is, as a plea, a bar, and conclusive between the same parties upon the same matter directly in question in a subsequent action. The rule is the same in chancery as at law.

 2. The plea of *res judicata* was properly sustained.

 3. The doctrine of *res judicata* applies to all matters which existed at the time of giving the judgment or rendering the decree, and which the party had the opportunity of bringing before the court.

Four appeals heard together at Staunton, but decided at Richmond, from decrees of the circuit court of Clarke county rendered 18th May, 1880, in two causes therein pending. The three appeals which are first named are from the decree on that day rendered in the chancery suit instituted by H. H. Crumblish for Joseph T. Griffith, to attach 5,000 shares of the stock of the Shenandoah Valley Railroad Company, belonging to the Central Improvement Company, for a debt of $8,826.93 with interest, due plaintiff for work done as its sub-contractor, in the construction

of sections Nos. 61 and 62 of the Shenandoah Valley Railroad through the county of Page. The S. V. R. Co., answered that the C. I. Co. had subscribed for 10,000 shares of its stock, whereof only 5,000 shares had been issued, being all that had been paid for, and that it claimed a lien on those shares for the payment of the unpaid subscription for the other 5,000 shares. The decision on this point being adverse to the S. V. R. Co., it appealed.

The attachment was served on 27th December, 1876. On 31st January, 1877, the C. I. Co. assigned the said shares for the benefit of the Pennsylvania Railroad Company, which, answering the amended bill filed by the plaintiff in December, 1878, as well as the original bill, claimed a better right to the said shares on two grounds—first, that the service of the attachment was illegal, having been made *on the wife* of the secretary of the company; and second, that the certificates of stock were similar in nature to negotiable paper and passed by assignment free from the lien of the attachment to said company, which was a *bona fide* purchaser for value without notice thereof. The decisions on these points being adverse to the Pennsylvania Railroad Company, it appealed.

John Donaghue & Brother and other creditors of the C. I. Co., were parties to the amended bill and the petition filed in behalf of those creditors, averring that $600,000 of the first mortgage bonds of the S. V. R. Co. had been passed to the C. I. Co. as part payment for its work on the railroad, and afterwards transferred to the P. R. Co., and praying that said company be required to make full disclosures; and also averring that the C. I. Co. had been long before dissolved by reason of its insolvency and the sale under execution of its franchises, and praying that its assets be applied *ratably* to the satifaction of all its creditors.

The court below dismissed the amended bill, and the petition, and John Donaghue & Bro. and others appealed.

Adams, Hamner & Co., and other creditors of the C. I. Co., were parties to the amended bill, yet brought their independent suit, making averments similar and parties the same, as in the amended bill, and the petition subsequently filed. After the dismissal of the amended bill and petition, the S. V. R. R. Co. pleaded to the bill of Adams, Hamner & Co. *et als.* its plea of *res judicata.* The circuit court sustained this plea; and thence resulted the fourth appeal.

The object of the suits, the various proceedings, and the facts in the cases are clearly and fully detailed in the opinion of Judge *Lewis.*

*William H. Traverse,* for the Shenandoah Valley Railroad Co., appellant.

*S. J. C. Moore & Son,* for the Pennsylvania Railroad Co., appellant.

*McDowell & Moore,* for John Donaghue & Bro. and others, appellants.

LEWIS, J., delivered the opinion of the court.

In these causes the main controversy relates to 5,000 paid up shares of the capital stock of the Shenandoah Valley Railroad Company, certificates for which were issued by that company to the Central Improvement Company in 1874.

The Central Improvement Company is a corporation chartered by the laws of the State of Pennsylvania. The chief object of its creation, as its name implies, was the construction of works of internal improvement. By written agreement, dated the 9th day of August, 1870, it contracted with the Shenandoah Valley Railroad Company to

construct its road from Shepherdstown, in the State of West Virginia, to Big Lick, in Roanoke county, Virginia. Under this contract, the work was begun and prosecuted as far as Luray, in the county of Page. It was done by sub-contractors, many of whom are parties to these suits, claiming as creditors of the Central Improvement Company for work done and materials furnished by them. Among these sub-contractors were H. H. Crumblish, J. T. Griffith, John Kelley, and Henry Etterle. The two last, in September, 1874, obtained judgments in the courts of Pennsylvania to a large amount against the Central Improvement Company, upon which executions were issued and levied upon all the franchises and rights of the company in every county in that State. At the sheriff's sale the plaintiffs became the purchasers for the sum of ten dollars.

On the 26th day of December, 1876, Crumblish, having assigned to Griffith all his claims against the Central Improvement Company, instituted, for the use and benefit of Griffith, a suit in equity, in the circuit court of Warren county (which was subsequently removed to the circuit court of Clarke county) against that company and the Shenandoah Valley Railroad Company. The object of the suit was to attach all stock owned by the Central Improvement Company in the Shenandoah Valley Railroad Company, and all debts due by it to the Central Improvement Company to satisfy the debt due by the latter company to the plaintiff.

On the following day the process was served on the railroad company, as appears by the sheriff's return, " by leaving a copy with the wife of Thomas N. Ashby, at the residence of the said Ashby, he not being found at his usual place of abode, and giving information of the purport thereof; the said Ashby being the treasurer and secretary of the said Shenandoah Valley Railroad Company, and being a resident of the county of Warren."

About one month thereafter—namely, on the 31st day of January following—the Central Improvement Company assigned to John D. Taylor, of Philadelphia, trustee for the Pennsylvania Railroad Company, the said 5,000 shares of stock as collateral security for a large indebtedness due by the former to the latter company.

The Shenandoah Valley Railroad Company filed its answer and two amended and supplemental answers. It averred that the Central Improvement Company became a subscriber for $1,000,000, or ten thousand shares of its capital stock, and paid thereon the two per cent. required by the laws of Virginia to entitle it to vote the said stock in the meetings of the stockholders of the said railroad company; but that certificates for 5,000 shares only had been issued. It further averred that before the institution of the suit it had settled in full with the Central Improvement Company, and owed it nothing. It referred to the transfer of the said 5,000 shares of stock to Taylor, and prayed that he be summoned to show his rights, whatever they were. It claimed a lien on the said 5,000 shares of stock, for which certificates had been issued, to satisfy the balance due by the Central Improvement Company for the 5,000 shares, for which certificates had not been issued.

Nearly two years after the institution of the suit and the assignment of the stock for the benefit of the Pennsylvania Railroad Company, an amended bill was filed by Griffith, in behalf of himself and other creditors of the Central Improvement Company, in which it was alleged that that company, as a corporation, had long since been dissolved; that its dissolution had been effected by the sale of its franchises and charter rights under the executions issued from the courts of Pennsylvania, already referred to, and that one Kelley had become the purchaser thereof. It further alleged that certain first mortgage bonds of the Shenandoah Valley Railroad Company, to an amount ex-

ceeding $600,000, which had previously been assigned by that company to the Central Improvement Company, had by the latter been transferred to the Pennsylvania Railroad Company. And the prayer of the bill was that the Pennsylvania Railroad Company be made a party defendant to the amended bill and to the original bill, and required to disclose whether it at that time held said bonds, and the amount so held by it, from whom they were acquired, and how much was paid for them or advanced upon them, and whether held as collaterals or otherwise, and that it be required to maintain or relinquish its claim to said bonds.

The Pennslyvania Railroad Company appeared and answered the original and amended bills. It denied that the Central Improvement Company had been dissolved, or that the said Kelley was the owner of its franchises or charter rights, and averred that if he ever owned them he had long since forfeited them by his failure to reorganize the company in pursuance of the laws of Pennsylvania. It admitted that the said mortgage bonds and other securities had been transferred to it by the Central Improvement Company as collateral security for a debt due to it by that company, and that the same had been sold and the proceeds applied to the debt, but leaving a large balance still due. It admitted that the said 5,000 shares of the capital stock of the S. V. R. R. Co. had been assigned for its benefit to John D. Taylor; that said assignment was made for valuable consideration; and that the said shares of stock had been sold at public auction in the city of Philadelphia.

An answer by Taylor, the trustee, containing like averments, was also filed.

During the progress of the cause, Donaghue & Bro., and sundry other creditors of the Central Improvement Company appeared and filed their petition in behalf of themselves and all its creditors. They averred that the Central

Improvement Company had been dissolved by reason of its insolvency and the sale of its franchises under executions in Pennsylvania, and claimed the right to subject the assets of the company, and to have the proceeds applied ratably among its creditors to the payment of their debts.

At a later day, and after the institution of the suit presently to be referred to, another petition by the same creditors, in which Griffith united, was also filed. Among other things, it alleged that in the settlement (which it was charged was unauthorized) between the S. V. R. R. Co. and the C. I. Co., bonds to an amount exceeding a million dollars, had been turned over to the latter company by the railroad company; being an amount greatly in excess of its indebtedness to the Central Improvement Company. It further alleged that under a new contract with Saterlee & Co., for the construction of the road, the railroad company had agreed to issue new bonds and secure the same by a new mortgage; and that unless restrained it would be in its power, controlled as it was by the Central Improvement Company, which continued to vote the said million dollars of stock in the stock meetings of the railroad company, to destroy the value of the stock, upon which the creditors of the Central Improvement Company might ultimately be compelled to rely for payment of their debts. It was claimed that their right to resort for that purpose to the stock issued to the C. I. Co. was superior to the claim thereto of the Pennsylvania Railroad Company as the assignee thereof, or to any claim thereto on the part of the S. V. R. R. Co.

Wherefore, they prayed that in order to protect the interests of the creditors, who they averred were the real owners of all the assets of the Central Improvement Company, the court would enjoin that company from further voting the said stock, and that a receiver be appointed to take charge of all the assets, including the said stock, and

to vote the same in stock meetings of the railroad company, and for any further relief to which they might be entitled.

It appears from the record, that during the pending of the suit, and without the authority of the court, the Shenandoah Valley Railroad Company assumed to sell, at public auction, the stock subscribed for by the Central Improvement Company, including the said 5,000 paid up shares for which certificates had been issued, and which were attached and afterwards assigned to the Pennsylvania Railroad Company, as we have already seen. It assumed to sell these shares to satisfy the balance due on account of the stock which had not been paid for, and for which certificates had not been issued, to the Central Improvement Company.

The cause came on to be heard on the 18th day of May, 1880, when the circuit court by its decree held that the attachment had been legally served; that the subsequent assignment of the said 5,000 shares of stock to the Pennsylvania Railroad Company was valid, subject, however, to the lien of Griffith's attachment; that no lien existed on said shares in favor of the Shenandoah Valley Railroad Company for any balance due on account of the unpaid stock subscribed for by the Central Improvement Company, and dismissed the amended bill and the petitions filed by the creditors.

From this decree the Shenandoah Valley Railroad Company, the Pennsylvania Railroad Company, and the said petitioning creditors, severally applied for and were allowed appeals by one of the judges of this court.

The error assigned by the Shenandoah Valley Railroad Company is that the court denied its asserted lien on the said 5,000 paid up shares of stock. We think the provisions of chapter 57 of the Code, relied on by the counsel for the company, giving a lien on stock for unpaid subscriptions

thereto, do not apply to shares which have been fully paid for, as in this case; and that the court below properly so held.

By the Pennsylvania Railroad Company, it is insisted that the court erred in postponing its claim as the assignee of the said shares to the lien of Griffith's attachment, for two reasons—1st. Because there was no valid levy of the attachment; and 2dly. Because, if valid, the certificates for the shares assigned being, in their nature, similar to negotiable instruments, the title thereto passed by the assignment free from the lien of the attachment, made, as it was, *bona fide*, for valuable consideration, and without notice of the attachment.

The process was served, as we have seen, by leaving a copy thereof with the wife of the secretary of the Shenandoah Valley Railroad Company. It is urged that such service was invalid, because it should have been served on the president or other officer superior to the secretary, and no reason for the failure to do so appears in the sheriff's return or elsewhere in the record; and further, because process to summon a corporation must be served *personally* on an appropriate officer thereof, and cannot be served by leaving a copy with the wife or other member of such officer's family.

As to this objection, it is sufficient to say that no such objection was, in any form, or at any time, or by any one, made in the court below. It is for the first time made here; and we think it now too late to do so.

The second objection is disposed of by the decision of this court in the case of the *Chesapeake and Ohio Railroad Company* v. *Paine & Co.*, 29 Gratt., in which it was decided that the shares of a stockholder in a railroad corporation are liable to attachment, and that by virtue of his attachment the attaching creditor acquires a lien thereon superior to the claim of a subsequent *bona fide* purchaser of the

shares for value and without notice of the attachment. From that decision we see no reason to depart in this case.

The errors assigned by the petitioning creditors are, that the court erred in dismissing the amended bill and their petition, and in not decreeing a sale of the said 5,000 paid up shares of stock for their benefit.

We are of opinion that these assignments are not well taken. While it is true that courts of equity in this and other States of the Union are liberal in allowing amendments, they do not allow amendments to the extent of making a new case, and especially one inconsistent with the case as made by the original bill. Such a case, we think, was made by the original bill and petition filed in this case, and for that reason alone both were properly dismissed.

The question as to what is a new case, and the extent to which amendments are allowed in equity, is so fully discussed by Judge Staples in delivering the opinion of the court in *Belton* v. *Apperson*, 26 Gratt., and by Judge Burks in the later case of *Hurt* v. *Jones and Wife*, 75 Virginia Reports, that we deem it unnecessary in this connection to do more than to refer to those cases.

It is insisted that the Central Improvement Company having been dissolved by reason of its insolvency, as well as by reason of the sale of its franchises in Pennsylvania, its assets should have been distributed ratably among all its creditors, and that it was error not to have so decreed.

That insolvency, *per se*, does not work a dissolution of a corporation, nor invalidate an assignment of its effects for the benefit of creditors, is a proposition too well settled to require the citation of authorities. See, however, Ang. and Ames on Corporations (10th ed.), § 775; *Dana* v. *Bank of the United States*, 5 Watts. and S. 223; and *Railway Co.* v. *Fitler*, 60 Penn. St. 124.

There is nothing in the decision of this court in *Lindsey* v. *Corkery & Milward*, 29 Gratt. 650, cited and relied on by counsel for creditors in their elaborate brief, inconsistent with the foregoing views. In that case, the members of a partnership having been severally adjudicated bankrupts, this court held that the attachment sued out in that case by a single creditor of the firm must be abated, and the social assets applied to the benefit of all the partnership creditors who should come in and establish their debts.

In this case the record shows that there were no assets of the Central Improvement Company to be administered. Its stock in the Shenandoah Valley Railroad Company had been attached, and, subject to that attachment, had been assigned to the Pennsylvania Railroad Company. The Shenandoah Valley Railroad Company owed it nothing, and was in no way liable to it. And, in short, at the time the amended bill and petition were filed, there were no assets of any character to be administered for its general creditors. In any view, therefore, the amended bill and petition were properly dismissed.

Without prolonging the discussion, it is sufficient to say that we find no error in the decree of the 18th day of May, 1880, and the same must be affirmed.

This disposes of the three appeals in the Griffith suit. We come now, lastly, to consider the case of Adams, Hamner & Co. and others *v.* the Shenandoah Valley Railroad Company and others.

It is here on appeal from a decree pronounced by the same court, at the same term, and on the 28th day of May, 1880. The appellants are creditors of the Central Improvement Company, one of the defendants in the suit, and the same who, as we have seen, became parties to the Griffith suit. Their bill in this case was filed after the amended bill, but before their petition, was filed in that case.

After the decree of the 18th May, 1880, was rendered in that case, the Shenandoah Valley Railroad Company filed in this a plea of *res judicata*, which by the decree of the 28th May was sustained and the bill dismissed. And the single question now presented for our consideration is, whether there is error in that decree.

It is a familiar maxim in our jurisprudence that no person shall be twice vexed for one and the same cause. Therefore a judgment of a court of competent jurisdiction directly on the point is, as a plea, a bar, and conclusive between the same parties upon the same matter directly in question in a subsequent action. And in this there is no difference between a verdict and judgment in a court of common law and a decree of a court of equity. Both stand on the same footing. The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because, without it, an end could never be put to litigation. *Hopkins* v. *Lee*, 6 Wheat, 109. The doctrine of *res judicata* applies to all matters which existed at the time of giving the judgment or rendering the decree, and which the party had the opportunity of bringing before the court. See 7 Rob. Pr. 172, and the many cases there cited.

Applying these principles to the case before us, it is plain that the court below properly sustained the plea and dismissed the bill. In all of its essential features, the case, as made by the bill, is identically the same as that made by the amended bill and petition in the Griffith suit. There is no relief prayed for in this which the appellants could not have obtained in that suit, if entitled thereto. There are no material averments in the bill in this case which could not have been investigated and passed on in that, and which, in effect, were not passed on by the final decree in that case. If, therefore, the appellants have been

denied relief to which they were entitled, their appropriate remedy for the correction of the error was by appeal from the decree in the Griffith suit. To that remedy they have, in fact, resorted; and with what success we have just seen. There is no error in the decree complained of, and the same is affirmed.

DECREE AFFIRMED.