## JOHN WELSH *versus* JOSEPH B. JOY *et al.*

The facts necessary to give an officer authority to make a deed of an equity of redemption taken and sold by him on execution, need not be recited in the deed; and a misrecital of them may be aided by the return on the execution, showing that the proceedings of the officer have been regular.

It is not a valid objection to a title to an equity of redemption sold on execution, that the execution was not returned into the clerk's office at the return term; if returned at any time before the trial in which it is sought to be used, it will be competent evidence.

One who as sheriff has levied an execution, and sold property to satisfy it, and executed it, may make a valid return thereon a long time after he has ceased to be in office.— So of a deputy sheriff.

Until an execution is actually deposited in the clerk's office, the return does not become a matter of record, and until then the officer needs not the permission of the court to make or amend his return.

WRIT of entry to recover certain real estate situate at Wheeler's Point, in Boston ; the demandant counting on his own seisin and a disseisin by Benjamin Joy, the ancestor of the tenants. Plea, that Benjamin Joy did not disseise the demandant ; and issue thereon. Trial before *Shaw* C. J.

Both parties claimed title under Alfred Curtis ; the demandant, under an attachment and sale of an equity of redemption, at the suit of William Savage, and divers mesne conveyances from Savage to the demandant ; the tenants, under a mortgage deed made by Curtis to Charles Thacher, and by him duly assigned to Benjamin Joy. The attachment was made on the 27th of September 1825, and the mortgage, on the 28th of the same September ; so that if all the proceedings under the attachment, levy and sale were regular and conformable to the statute, Curtis's title was thereby devested, by relation, from the time of the attachment, and consequently the demandant had the elder and better title ; but if those proceedings could not be supported, the tenants would be entitled to hold under the mortgage.

The demandant produced, among other evidence, the execution, dated March 3, 1826, issued upon a judgment of the Court of Common Pleas, in favor of Savage against Curtis, and the returns thereon, purporting to be made by Nathaniel Freeman, deputy sheriff. The execution and one

of the returns, dated April 1, 1826, relating to land extended upon, were recorded in the registry of deeds June 20, 1826. In the list of fees annexed to this return were charges for posting, advertising in newspapers, auctioneer's commission, and deed. The return relating to the levy on the equity of redemption in question, was dated April 17, 1826. The deed from Freeman to Savage, of the equity of redemption, dated April 17, 1826, was also produced. This deed recites that Freeman seized the equity of redemption on the *seventeenth* day of March, whereas the return states the seizure to have been made on the *seventh*. The deed also recites that the sale of the equity of redemption was advertised in the *Boston Daily Advertiser* ; whereas the return states it to have been advertised in the *Boston Commercial Gazette.* The sale is stated, both in the deed and in the return, to have been made on the 7th of April. In the deed Freeman covenants that he has complied with all the rules of law for making sale of rights in equity of redeeming real estate taken in execution.

The advertisement of the sale was inserted in the Boston Daily Advertiser of March 20, 1826, but in no other number of that paper. It was found in the Boston Commercial Gazette of Thursday the 23d and Thursday the 30th of March, and Thursday the 6th of April.

The tenants gave in evidence a certificate of John Stickney, clerk of the judicial courts, having the custody of the records and files of the Court of Common Pleas, that on the 17th of September 1827 the execution above mentioned was not on file, and that on the 18th it was put on file.

The tenants then offered evidence that the return, so far as it relates to the sale of the equity of redemption, purporting to be made by Freeman as deputy sheriff, was not made until after the 23d of February 1827, when he went out of office. The demandant, insisting that the return was not necessary to the validity of his title, objected to the evidence, as tending to falsify and contradict the officer's return, in a collateral proceeding ; but the objection was overruled and the evidence admitted. It was then agreed, that if it was competent to the tenants in this case, and upon the issue

joined, to go into evidence of the fact, this part of the return was in fact made after Freeman had gone out of office, and that it was made without any order or permission of the Court of Common Pleas.

A verdict was taken for the demandant by consent, subject to the opinion of the Court upon the questions reserved.

*W. Sullivan*, for the tenants, insisted that the objections made at the trial, to the deed from Freeman to Savage, were fatal to the demandant's title. *St.* 1798, *c.* 77, § 4. The demandant is estopped to contradict the deed. But if evidence *aliunde* be admissible, the deed is not aided by taking it in connexion with the return, for one is inconsistent with the other, and the Court cannot say which of the two states the facts correctly.

But the return cannot be received in evidence, it not having been made until after Freeman ceased to be a deputy sheriff. He was no longer under bond for the faithful performance of the duties of the office. The fact of his not being in office may be inquired into. *Andrews* v. *Linton*, 2 Ld. Raym. 884, 1 Salk. 265, and Holt, 273. The return should have been completed by the sheriff, or after an application to the Court of Common Pleas for leave to amend. *Ingersoll* v. *Sawyer*, 2 Pick. 280 ; *Thatcher* v. *Miller*, 11 Mass. R. 414, and 13 Mass. R. 270.

It is indispensable to the validity of a levy on an equity of redemption, that there should be a return of the execution. The statute requires expressly that an extent on land shall be recorded, and it is equally important that there should be the like evidence of a levy on an equity of redemption ; in order that any party interested may have it in his power to ascertain the true situation of any title to real estate. The rule of the common law, that a return of the execution is not essential to the title derived under a levy, is not applicable here, where the proceedings are regulated by statute. *Wellington* v. *Gale*, 13 Mass. R. 488.

*S. Hubbard* and *S. D. Parker*, for the demandant, argued that a return was not necessary to give validity to the demandant's title, but that were it otherwise, the return in question, was filed in the clerk's office in due season ; it having been

<div style="margin-left: auto">

Welsh
v.
Joy.

</div>

placed there before this action was brought ; *Jackson* v. *Sternbergh*, 1 Johns. Cas. 155 ; *Ingersoll* v. *Sawyer*, 2 Pick. 279 ; *Prescott* v. *Pettee*, 3 Pick. 334 ; *Bradford* v. *Earle*, 4 Pick. 121 ; *Emerson* v. *Towle*, 5 Greenl. 198 ; that the return, being so filed, was conclusive as to all the circumstances returned ; *Slayton* v. *Chester*, 4 Mass. R. 478 ; *Bott* v. *Burnell*, 9 Mass. R. 96 ; *Estabrook* v. *Hapgood*, 10 Mass. R. 313 ; *Bott* v. *Burnell*, 11 Mass. R. 163 ; *Lawrence* v. *Pond*, 17 Mass. R. 433 ; *Bean* v. *Parker*, ibid. 591 ; that Freeman had authority to amend and complete his return after he had gone out of office, and that on the execution as recorded in June 1826 there were sufficient minutes from which he might extend the return ; *St.* 1783, *c.* 44, § 4 ; *Thatcher* v. *Miller*, 11 Mass. R. 413 ; *Welles* v. *Battelle*, ibid. 481 ; *Adams* v. *Robinson*, 1 Pick. 462 ; *Clerk* v. *Withers*, 6 Mod. 290, and 2 Ld. Raym. 1072 ; that before a return is placed on the files of the court, the officer may alter or complete it without asking leave to amend ; that the deed would have been valid without any recital, and the erroneous recital therefore did not vitiate it ; *Jackson* v. *Pratt*, 10 Johns. R. 386 ; *St. John* v. *Diggs*, Hob. 130 ; Co. Lit. 352 *b* ; *Shove* v. *Dow*, 13 Mass. R. 534 ; and that if it were material, the deed might be corrected by the return to which it refers.

<div style="margin-left: auto">

*March* 18*th,*
1833.

</div>

SHAW C. J. delivered the opinion of the Court. The question in this case is upon the validity of the demandant's title.

An objection is taken to the officer's deed made upon the seizure and sale of the equity of redemption, that it appears in the recital, that thirty days did not elapse between the seizure and sale, as required by the statute, and it is contended that by law the party is estopped to deny that the facts were as stated in such recital, and from showing the true state of the fact by the officer's return or by other evidence *aliunde.* But the Court are of opinion, that those claiming under that deed are not so estopped, that all the facts upon which the power is given to the officer, need not be recited in the deed, and that a misrecital of such facts is not fatal ; and that it may be aided by a return upon the

execution showing that the statute has been duly complied with and the power pursued. *Jackson* v. *Pratt*, 10 Johns. R. 386.

Another exception was, that the execution was not returned into the clerk's office at the return day, nor until many months after ; but this is no valid exception, and it is not necessary to the validity of a title under an officer's sale, that the execution shall be returned to the clerk's office at the return day ; but if returned at any time before the trial, it is sufficient to make it competent evidence. *Prescott* v. *Pettee*, 3 Pick. 331 ; *Emerson* v. *Towle*, 5 Greenl. 197.

The levy of an execution is often not completed and the execution cannot be returned, till after the return day, and there being no time limited by law, within which an officer shall make his return, the Court have no ground upon which to decide, that a return shall be rejected as a nullity, as not being made in sufficient season. There is also no time limited from the sale, within which a deed shall be made by the officer to the purchaser ; nor any time within which the purchaser shall record his deed. The principal security that such delays shall not be abused to the injury of others is, the interest of all who are concerned, to complete their titles promptly, and the apparent absence of all interest to suffer unreasonable delays. But if it be thought necessary to the security of the rights of property, to fix with more precision the times within which these various acts shall be done, it is a question for legislative and not for judicial consideration.

But a much more difficult question, and the one which has principally demanded and received the attention of the Court, is, whether an officer, who has in fact levied an execution, sold property to satisfy it, and executed it, can make a valid return thereon many months after he is out of office. Though at first view it appears that there would be great risk of collusion and fraud, in permitting an officer, long after he is out of office, to make a return, yet we think it results from the nature of his office and duty, regulated as well by the common law as by statute, that he has that power. There would be the same danger of abuse, in making a return long after the business was actually done, by one retain-

Welsh
*v.*
Joy.

ing his office, and yet it would be difficult to discover any satisfactory ground upon which to hold that it would be contrary to law.

Until the execution is actually deposited in the clerk's office, the return does not become matter of record ; and until then the officer needs not the authority of the court to make or amend his return ; till then it seems to be under his own control and in his own power.

It seems to be a rule of the common law, that an officer, who has begun the service of an execution, shall proceed and complete it, though he go out of office in the mean time. *Clerk* v. *Withers*, 1 'Salk. 322.

But this rule does not stand solely upon the authority of the common law, but we think the same rule is prescribed by statute. *St.* 1783, *c.* 44, § 4. The statute is explicit, that all sheriffs, when removed from office, as well as their deputies, shall have power to execute all such precepts as may be in their hands, at the time of their removal from office. Probably, from the context, the primary intent of this clause of the statute was to provide, that the deputies should retain their power to this extent, when their general authority should be determined by the removal of the sheriff ; but the terms are broad enough to embrace the case of each deputy sheriff, removed from his office, and aided by the general rule of the common law, and a reasonable and just regard for the rights of those who have an interest in the execution of these public and official duties, we think that the statute is to be so construed as to include this case.

The power of executing all process *in their hands*, at the time of their removal, goes a little beyond the rule of the common law, but necessarily includes the power of completing the execution of all process, the execution of which had been begun by them, and *à fortiori* it includes the power of making all needful returns. If therefore when Freeman was removed, he had advertised the property for sale, he might afterwards proceed to sell and give deeds, and do all other needful acts. If he had sold, he might execute ? deed, and if he had executed a deed, he might make a re∙ turn. Now as there was no time limited within which his

return must necessarily have been made, to be available, if he had remained in office, and as he did virtually remain in office as to this process, that is, as he did retain his official authority and character, for this purpose, no different rule can properly be applied to the case of a deputy removed, from that applicable to one remaining in office.

There is the less reason for apprehension of misconduct or collusion in a case like the present, where the officer has all the materials for a return, prepared to his hands, and in such form, that he can hardly make a false return without immediate detection from his own open and recorded acts. Here are the advertisements, the deed on record, and the execution recorded in the registry of deeds, with a list of the fees for all the acts done, including a charge for making this sale.

It seems clear, that if this return can be supported as a good return, and received as competent evidence, it shows the regularity of the proceedings upon the execution, and establishes the title under which the demandant claims. And on the whole, we are well satisfied, after some doubt and hesitation, that the officer had authority to make return at the time and in the manner that he did, that it shows a good power on the part of Freeman to convey, that that power was well executed, notwithstanding the misrecital in the deed, that under that deed William Savage acquired a good title which has been well conveyed to the demandant, that this title is prior in time and of course better in right, than the mortgage from Curtis to Thacher, under which the tenants claim, and that the demandant has a right to recover.

*Judgment on the verdict.*