## A. J. HENTIG v. J. W. REDDEN.

1. DECREE — *Res Judicata.* A judgment or decree of a court of competent jurisdiction is not only final as to the subject-matter, but also as to every other matter which the parties might have litigated in the case and which they might have had decided.

2. EJECTMENT — *Title.* Where a judgment is rendered in this state for the plaintiff in an action in the nature of ejectment, the title which he recovers is thereby established as against the defendant.

3. PLEADING — *After-acquired Title.* Where an action in the nature of ejectment is pending between parties, and the defendant, during the pendency of the action, obtains a new or another title, this title, to be of any benefit, must be asserted in that action before judgment is rendered against the defendant.

*Error from Jackson District Court.*

THE opinion states the facts.    Judgment for the defendant, *Redden,* on December 24, 1888.    The plaintiff, *Hentig,* brings the case here.

*F. G. Hentig,* and *Lloyd D. Simpson,* for plaintiff in error. *Redden & Schumacher,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below, brought on the 18th day of July, 1887, by Mrs. A. J. Hentig against J. W. Redden, asking that her title to four certain lots on Clay street in the city of Topeka be quieted, and that the defendant be forever barred from asserting any claim or interest to said lots or any part thereof. The defendant filed an answer containing a general denial, and also the plea of *res adjudicata.* The place of trial of the action was transferred from the district court of Shawnee county to the district court of Jackson county. Trial was there had before the court without a jury. No special findings were requested or made by the trial court, but the court, after hearing the evidence and the arguments, made a general finding in favor of the defend-

ant and against the plaintiff. Of this judgment, plaintiff complains.

We need refer only to the plea of *res adjudicata*, and the evidence offered in support thereof. Prior to March 1, 1878, J. J. Puterbaugh, of Logansport, Ind., was the owner of the lots in controversy. On March 1, 1878, Puterbaugh, then residing in Logansport, Ind., made an assignment of certain real and personal property to Thomas H. Bringhurst, in trust for the benefit of his creditors. The lots in dispute were not mentioned in the deed of assignment. On the 22d of August, 1883, J. J. Puterbaugh and wife sold and conveyed by quitclaim deed to J. W. Redden, for the consideration of $120, the lots described in the petition. On the 2d day of August, 1878, Thomas H. Bringhurst sold and conveyed, by quitclaim deed to Charles S. Puterbaugh, of Cass county, Indiana, the lots for the consideration of $9. On the 25th day of September, 1883, Thomas H. Bringhurst sold and conveyed the same lots to Mrs. A. J. Hentig by quitclaim deed, for the consideration of $1. On the 18th day of May, 1887, Charles S. Puterbaugh sold and conveyed to Mrs. A. J. Hentig the same lots by quitclaim deed, for the consideration of $10. There is also evidence that he executed to Mrs. Hentig a prior deed, intending to convey these lots, in 1883. On October 1, 1883, J. W. Redden brought his action against Mrs. A. J. Hentig in the district court of Shawnee county, in the nature of ejectment, to recover the possession of the same lots. Mrs. A. J. Hentig, in her answer in that case, alleged that J. J. Puterbaugh, prior to the execution of his deed of August 22, 1883, to J. W. Redden, had sold and assigned all of his real and personal property to James H. Bringhurst, in trust for the benefit of his creditors. She further answered that she was the owner and in the possession of the lots by virtue of a tax deed. (*Hentig v. Redden,* 35 Kas. 471.)

Upon the trial, Charles S. Puterbaugh testified as follows:

"Ques. Was it at public or private sale that you bought these lots? Ans. Public sale.

"Q. Was your father, Jacob J. Puterbaugh, present at that sale? A. If all his real estate was sold at one sale, he was present; if not, I am not sure.

"Q. What was the price at which the lots were sold to you by the assignee? A. $1 each, I think.

"Q. Did you pay for them? A. Yes, sir. . . .

"Q. When did you make the first deed to Mrs. A. J. Hentig? A. I think it was in 1883 I made the first deed to Mrs. A. J. Hentig.

"Q. Did she pay you for those lots? A. Yes, sir; she gave me $200, I believe.

"Q. Did you make her a deed for it? A. Yes, sir.

"Q. What became of that deed? A. Sent it to her. I have never seen it since, to the best of my knowledge.

"Q. Did you sell those lots and convey them in that deed by the same description as that used by the assignee in his conveyance to you? A. I believe I did, not knowing there was an error in the deed of assignment.

"Q. What became of that assignment? A. I sent it to her. . . .

"Q. Did you get any money for the second deed you made? A. Yes, sir, I did.

"Q. How much money did you get that time? A. $10.

"Q. How did you come to make this second deed? A. Sometime in 1886 Hentig wrote me, claiming there was some error in the deed, and asked for a quitclaim deed later in 1887. He sent to Judge Nelson a quitclaim deed for me to execute, which I did."

J. W. Redden testified on the trial, among other things, as follows:

"Q. Were you present in the court-room in Topeka, Shawnee county, Kansas, when the case of J. W. Redden v. Hentig was on trial, which involved the title to this same property? A. I was.

"Q. An action of ejectment of this same property? A. Yes, sir.

"Q. Did you see F. G. Hentig there? A. I did.

"Q. What statement did he make then in your presence or hearing relative to his wife then having a deed from Bringhurst or Charles Puterbaugh, for the property in controversy? A. Mr. Hentig had in his hand a paper that he said, I think, [he addressed the conversation to Mr. Harris,] was a deed

from Charles S. Puterbaugh to A. J. Hentig for these lots in controversy, but he did not propose to offer it in evidence at that time; he had thought of doing it, but he would not.

"Q. What was the first name of the Puterbaugh that he said the deed was from? A. Charles S. Puterbaugh, I think it was.

"Q. When was this conversation? A. My recollection now is that it was in the trial of the case, in the spring of 1885.

"Q. At the time the case was being tried and before the trial was over with, and before judgment was rendered? A. Yes, sir; during the progress of the case."

H. H. Harris testified:

"Were you present at the trial of the case of J. W. Redden v. A. J. Hentig, in Shawnee county, when the title of this property was in dispute? A. Yes, sir.

"Q. When was that? A. February, 1885.

"Q. Did you see F. G. Hentig at that time? A. Yes; he appeared for himself and his wife.

"Q. He was also a witness? A. Yes, sir.

"Q. What statement did he make about his wife having a deed from Charles S. Puterbaugh? A. After we had submitted the evidence upon each side, and submitted to the court, (Judge Martin, who was trying it *pro tem.,*) Mr. Hentig got up and pulled a paper out of his pocket that looked like a deed, and said to me, 'There is a deed to my wife for those lots, but I do not propose to try that title now; I am trying the tax title.' I wondered why he did not offer it, and immediately turned around to Dr. Redden and told him it was a surprise to me that he had such a deed. I did not know why he did not offer it.

"Q. If Mr. Hentig made any statement as to whom that deed was from, state what it was. A. He said it was a deed from Charles S. Puterbaugh to his wife, Mrs. A. J. Hentig, the plaintiff in this suit.

"Q. For what lots? A. For lots number 408, 410, 412, and 414, Clay street, Topeka, Kas."

Upon rebuttal, F. G. Hentig testified that the statements of J. W. Redden and H. H. Harris were incorrect, and that he never had any deed from Charles S. Puterbaugh to his wife in his possession until long after the trial of Redden v.

Hentig, referred to; that the only deed his wife ever had from Charles S. Puterbaugh was dated July 9, 1887.

The judgment of February 18, 1885, rendered in the case of J. W. Redden v. Mrs. A. J. Hentig, recites, among other things, as follows:

"The court finds that at the commencement of this suit the plaintiff, J. W. Redden, was the owner in fee-simple of lots 408, 410, 412 and 414, on Clay street, in the city of Topeka, Kas., and is such owner now, and that all the material allegations in the petition are true; second: The court further finds that Mrs. A. J. Hentig is in possession under two tax-deeds, one recorded May 9, 1877, and the other September 30, 1882, both issued on the tax sale of 1874, for the taxes of 1873; third: That said tax sale was void, first, because there was an unlawful combination of bidders at the sale, which prevented competition; the sale was made for illegal costs charged against the lots."

Under the general finding of the trial court, we must assume that Mrs. A. J. Hentig had in her possession a deed from Charles S. Puterbaugh during the trial of the former case of J. W. Redden v. Mrs. A. J. Hentig, in the month of February, 1885. It is possible that Dr. Redden and Mr. Harris were mistaken as to what deed Mr. Hentig exhibited, and, therefore, that the trial court was led into error; but, upon the evidence presented, we cannot now interfere or disturb the finding. There was sufficient evidence to support it, and the trial court's finding is conclusive. Therefore, under the evidence and the general finding of the trial court, we think its judgment must be affirmed, as the plea of res adjudicata was fully sustained.

It has been said several times by this court, and also by many other courts, that "A judgment or decree of a court of competent jurisdiction is not only final as to the subject-matter, but also as to every other matter which the parties might have litigated in the case, and which they might have had decided."

1. Decree—res judicata.

Under the provisions of the civil code, an action in the nature of ejectment, like the former case of J. W. Redden v.

Mrs. A. J. Hentig, settles the title between the parties in

2. Ejectment —title.

favor of the one recovering the judgment. (*Hurd v. Comm'rs of Harvey Co.*, 40 Kas. 92; *Barrows v. Kindred,* 4 Wall. 403; *Mahoney v. Middleton,* 41 Cal. 41; *Marvin v. Dennison,* 1 Blatchf. 159; *Edwards v. Roys,* 18 Vt. 473; *Reed v. Douglas,* Iowa, 37 N. W. Rep. 181.) This court, in *Comm'rs of Marion Co. v. Welsh,* 40 Kas. 770, said —

"That a general finding of title in the plaintiff — consequently of no title in the defendant — is a conclusive and binding decision against the defendant on the question of title, from whatever source it may be derived, and forever estops him from asserting a claim of title which existed at the time of the decree."

If Mrs. Hentig had in her possession the deed from Charles S. Puterbaugh for the lots during the pendency of the former action of Redden against herself, (as we are bound to assume she did have, from the finding of the trial court,) she could have offered that deed in evidence for what it was worth, to sustain her title and her right of possession. If necessary, she could have filed a supplemental answer. The law does not favor a multiplicity of suits, and, where all matters in controversy between parties as to the title or possession of real estate might be finally ended in one action, the law requires that this should be done. Parties cannot try title to real estate by piecemeal, in separate and independent actions upon separate deeds or chains of title, when they have in their possession during the trial separate and different deeds. If the deed from Charles S. Puterbaugh to Mrs. Hentig executed in 1883 did not, on account of a mistake of the parties, contain a proper description of the lots, yet, if Charles S. Puterbaugh had any title or interest therein, that title or interest was transferred to Mrs. Hentig in equity, if not in law, and therefore she ought to have asserted in the former action the deed which she first obtained from Puterbaugh. If Mrs. Hentig had obtained a new and distinct title to the lots after the final judgment in the former action, then that judgment would not have been *res adjudicata* against

her. But that is not this case. Under the finding of the trial court, she obtained her new and distinct title to the lots pending the former action. It was not used in that action. It was too late to use this title after the final judgment in the former action.

*3. Pleading — after-ac-quired title.*

The judgment of the district court will be affirmed.

All the Justices concurring.