Smith, Respondent, vs. The Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*September 30 — October 25, 1892.*

*(1) Sunday: Contracts.   (2) Res adjudicata.*

1. The fact that it was signed and delivered on Sunday renders void a written agreement whereby the owners of land consented to the laying of a railway track thereon and released all claim for damages.

Smith vs. The Chicago, Milwaukee & St. Paul R. Co.

2. In an action to remove a cloud upon plaintiff's title to certain lots and to a roadway and raceway adjacent thereto, it was adjudged that plaintiff had title to the lots but had no title to the roadway or raceway. In a subsequent proceeding, by one whose title was derived from the former plaintiff, for the appointment of commissioners to appraise his damages by reason of the laying of railway tracks over said roadway and raceway under a license from the former defendant, it is *held* that the former judgment is conclusive against the plaintiff's claim of title to such roadway and raceway.

APPEAL from the Circuit Court for *Rock* County.

This is a proceeding instituted by the respondent, *A. Hyatt Smith*, for the appointment of commissioners to appraise certain lands in the city of Janesville, occupied by the appellant's tracks, and which respondent, as trustee under the will of his late wife, claims to own, and which he alleges to have been taken by the appellant without purchase or payment of damages. The appellant answered the petition, in effect denying plaintiff's title to the lands in question, and claiming that respondent had, by written instrument under seal, consented to the laying of the appellant's tracks and released all damages.

The testimony was voluminous. The circuit judge found that the respondent, as trustee, was the owner of the lots in question; that the appellant's tracks had been laid thereon without purchase or payment of damages; and that the alleged agreement of release was executed by *Smith* upon Sunday, and was on that account void; and appointed commissioners to ascertain and assess respondent's damages. From this order the railway company appealed.

For the appellant there were briefs by *John T. Fish* and *Jackson & Jackson*, and oral argument by *A. A. Jackson*.

For the respondent there was a brief by *Fethers, Jeffris & Fifield*, and oral argument by *M. G. Jeffris*.

The following opinion was filed November 17, 1891:

WINSLOW, J. The questions raised by this appeal are: *First.* Was the agreement of release of damages void be-

cause executed on Sunday? *Second.* Does the plaintiff's ownership extend across the right of way and bed of the mill-race lying adjacent to his lots?

I. The agreement was confessedly signed by *Smith* and delivered to one Ford on Sunday. The circuit court found that Ford was acting as agent for the railway company at the time, and this finding is fully supported by the evidence. Under these circumstances, the question seems to be ruled by the decision of this court in the case of *De Forth v. Wis. & M. R. Co.* 52 Wis. 320. The discussion of the questions involved is so complete in that case that it is unnecessary to add anything here. The agreement was void.

II. The lands owned by plaintiff as trustee, and across which the appellant's track is laid, consist of a number of lots on the west bank of Rock river in the city of Janesville, and are a part of a continuous row of lots known as the "Janesville Water-Power Lots." All of these Janesville water-power lots are upon a strip of land which lies on the bank of the river, and between the river and an artificial mill-race, which runs for a considerable distance parallel to the river, and which conducts water for power purposes from a dam just above to various mills built along or over the race. According to the original plat, by which these lots and the lands west of the race seem to have been bought and sold for many years, the Janesville water-power lots are forty feet in width from north to south, bounded on the east by Rock river, and on the west by an open space about twenty feet in width, extending along the whole length of the raceway, which seems to have been intended as a right of way for the use of the owners of the lots, and it appears that it has been used in fact for such purpose. Upon the other side of the raceway is a public street known as "River Street." The railway company has located its tracks, not only upon the land included within plaintiff's

lot lines, as delineated upon the plat, but also upon the right of way between his lots and the race, and across the race itself (by means of a bridge) directly in front of plaintiff's lots; and thus it becomes important, in the assessment of damages, to determine whether or not, as respondent claims, his title extends across the right of way and the bed of the race, subject to the easements which unquestionably exist over such lands. The circuit court found that the respondent's title did extend across the right of way and the bed of the race, and to the middle of River street.

It appears that the right to draw and use water from the dam has been parceled out and sold to various manufacturers by deeds conveying so many inches of water, and that there are quite a large number of such owners who are now, as held in *Smith v. Ford*, 48 Wis. 115, the owners of this dam and water-power.

Now, it is claimed by the appellant here that all the lands from the center line of River street, eastward, under this mill-race, and the twenty-foot right of way, are appurtenant to the water-power and dam, and are owned exclusively by the persons owning the right to use the water-power created by the dam. In other words, the contention on one side is that title to the land in question passed in parcels under deeds of the water-power lots, and upon the other side that it passed under deeds which conveyed the right to draw water from the water-power. It is admitted by both sides that the title has passed from the original proprietor, and the question is, Did it pass to the purchasers of water-power lots in separate parcels adjoining their respective lots, or did it pass to those who bought water-power by inches, as tenants in common?

It is claimed by appellant that it was decided in the case of *Smith v. Ford*, 48 Wis. 115, that Smith's title did not extend across the raceway. That case was an action brought by J. M. Smith (whose title it appears is now in

the plaintiff) to quiet his title to certain lands which included the lots involved in the present proceeding. The principal question at issue in that case was as to which of two decrees, one rendered in the state court, and one in the United States court, was controlling as to title. J. M. Smith also claimed title to a part of the land in controversy in that suit by virtue of tax deeds, one of which purported to convey the raceway as a separate parcel of land. The circuit judge held that the raceway could not be assessed and taxed separately from the lots, and, consequently, that Smith did not acquire title thereto under his tax deed. Smith's claim to part of the raceway by virtue of his ownership of adjoining lots does not seem to have been urged, or even noticed; and, inferentially, perhaps the appellant's position may be right that the effect of the judgment was to declare that Smith had no title to any part of the raceway. It is very clear, however, that the court below and this court had only in mind the effect and validity of the tax deed which covered the raceway. This is demonstrated by the language of the late Mr. Justice TAYLOR in the opinion upon the motion for rehearing, upon page 163 of the case, where says: "The race and roadway having been constructed for the sole purpose of accommodating the lots abutting thereon, it is probable that all those who purchased the adjoining lots, with the right to draw water from such race, would take title to the lands under the race and roadway opposite their respective lots. It is, however, unnecessary to decide that question in this case." It cannot well be urged that a question was decided in a case when the opinion expressly declares that the question was not necessary to be decided.

The appellant also relied upon a decree of the circuit court of Waukesha county, in an action in which the Janesville Cotton Mills and others were plaintiffs, and *A. Hyatt Smith* and many others were defendants, as a bar to the re-

spondent's title in the bed of the raceway. This action was brought apparently to settle the rights of all parties having, or claiming to have, any interest in the dam or water-power. The decree purports to bar *A. Hyatt Smith* from any interest in the dam, canal, and water-power; but it is manifest that the questions litigated and decided in that case were in no wise connected with the ownership of the bed of the race, but simply the dam, water-power, and the easement in the raceway. It is evident that the word "canal" in the judgment was used with reference simply to rights possessed by the water-power owners in the raceway, whatever such rights might be.

Having disposed of these alleged bars by previous adjudication, we come back to the question whether the owner of one of the Janesville water-power lots owns the land under the roadway and raceway opposite his lot, subject to the easements thereon, or whether such land is owned in common by the owners of the dam and water-power. This is a question largely of intention of the original proprietor when he made his plat and commenced to sell lots. He laid out a long row of lots upon a very narrow strip of land, between the raceway and the river, and denominated them "Janesville Water-Power Lots." Viewed without connection with the race, one cannot conceive any valuable purpose to which they could be put; viewed in connection with the raceway, their admirable situation for the construction and operation of mills by means of water-power, is at once apparent. Now, did the proprietor intend to make these lots valuable, or did he intend to make them absolutely worthless, save as convenient spots whereon to sit and fish? Did he apply the name "Water-Power Lots" to them as a grim satire only, because they were absolutely cut off from all connection with the water-power, or because they were intended and expected to reach to the water-power? It seems to us that

these questions carry their own answer. No sane man could expect to sell these lots if they were absolutely cut off from the race by a strip of land owned by third parties. Similar questions have been before this court in the cases of *Mariner v. Schulte*, 13 Wis. 692, and *Pettibone v. Hamilton*, 40 Wis. 402; and the decisions in those cases go far to support the contention of respondent here that his title covers the land under the raceway and roadway. Such also was the intimation of the late Mr. Justice TAYLOR in the language quoted herein from the opinion in *Smith v. Ford*, 48 Wis. 163.

Certainly the owners of the water-power have rights in the raceway and the bank, and these rights consist of the privilege of having the water from the dam flow through the race just as long as they choose to draw off the water from the pond through the race. With this right or easement accorded to them, they possess all the rights which are necessary to the full and complete enjoyment of the water-power. Nothing further is of any use to them in their capacity of owners of the water-power. If such right is all that is necessary to the full enjoyment of the water-power, it would seem logically to be all that is appurtenant to the water-power. Such, at least, is our opinion, and the conclusion is that the fee of the roadway and raceway is in the owners of the water-power lots in parcels, subject to the easement or right of the water-power owners to draw water through the raceway as long as they desire so to draw it.

The circuit judge also found that the ownership of the proprietor of water-power lots extended to the middle of River street, on the west side of the race. This may seem to conflict with the conclusion reached in the case of *Mariner v. Schulte*, 13 Wis. 692; but, upon examination of that case, it will be seen that the reason upon which the decision in that case was based, namely, that there was a land high-

way and a water highway side by side, does not here exist; and we think, therefore, that the ordinary rule which carries the ownership of adjoining proprietors to the middle of a street was rightly applied here.

*By the Court.*— Order affirmed.

A motion by the appellant for a rehearing was granted February 2, 1892, and a re-argument was ordered upon the question as to the effect of the judgment in *Smith v. Ford*, 48 Wis. 115.

For the appellant, on the re-argument, there were briefs by *John T. Fish* and *Jackson & Jackson*, and oral argument by *A. A. Jackson*. *A. Hyatt Smith* being the grantee of, and privy in estate with, J. Maurice Smith, the judgment in *Smith v. Ford* binds *A. Hyatt Smith* in the same manner and to the same extent that it binds J. Maurice Smith, and is conclusive against the claim of title of *A. Hyatt Smith* in this proceeding. *Finney v. Boyd*, 26 Wis. 366; *Castle v. Noyes*, 14 N. Y. 329–331; *Campbell v. Hall*, 16 id. 575–579; *Strayer v. Johnson*, 111 Pa. St. 21; *Cent. Nat. Bank v. Hazard*, 30 Fed. Rep. 484–6; *Adams v. Barnes*, 17 Mass. 365–7; *Carver v. Jackson*, 4 Pet. 1–85; Freeman, Judg. sec. 162; 2 Black, Judg. secs. 534–549; 1 Greenl. Ev. sec. 522; 1 Herman, Est. & Res Adj. 130–134; *Neal v. Foster*, 36 Fed. Rep. 29–32; *Cromwell v. Sac Co.* 94 U. S. 351; *Iowa Co. v. M. P. R. Co.* 24 Wis. 93, 123–4; *Noonan v. Orton*, 27 id. 300, 310; *Warner v. Trow*, 36 id. 195, 199, 200; *Lathrop v. Knapp*, 37 id. 307, 312; *Fire Dept. v. Tuttle*, 50 id. 552; *Quackenbush v. W. & M. R. Co.* 71 id. 472, 474–5. The judgment in *Smith v. Ford* is not only *res adjudicata* as to the questions decided, but as to all questions embraced in the pleadings and that might have been decided in that action. *Aurora City v. West*, 7 Wall. 82–102; *Shenandoah V. R. Co. v. Griffith*, 76 Va. 913, 925; *Harris v. Harris*, 36 Barb. 88–94; *Danaher v.*

*Prentiss,* 22 Wis. 311, 316, 317; *Iowa Co. v. M. P. R. Co.*
24 id. 93, 112, 124, 125; *Shepardson v. Cary,* 29 id. 34; *Embury v. Conner,* 3 N. Y. 511–522; 1 Herman, Est. & Res
Adj. 130–136; *Wilson's Ex'r v. Deen,* 121 U. S. 525.

For the respondent there was a brief by *Fethers, Jeffris,
& Fifield,* and oral argument by *M. G. Jeffris.* They contended that the judgment in *Smith v. Ford* cannot be held
to be an adjudication that Smith did not own the property
in question here. That action was to remove a cloud upon
Smith's title, and in order to maintain the action he must
have been in possession of the lands. Only a question of
possession was involved, and upon that this court could
have affirmed the judgment without determining any other
question. The questions involved here could not have been
decided. They were not decided and they were not discussed. *Gray v. Tyler,* 40 Wis. 579; *State ex rel. Brown v.
Rusk,* 23 id. 636, 643; Freeman, Judg. sec. 271.

The following opinion was filed October 25, 1892:

WINSLOW, J. A rehearing was ordered in this case upon
one question alone, namely, the effect of the judgment
rendered in the action of *Smith v. Ford,* 48 Wis. 115, upon
the title to the land in the roadway and under the raceway
opposite the lots owned by *Smith* as trustee. In the original opinion in this proceeding it was held that the question as to the title to the roadway and raceway was not
decided in the action of *Smith v. Ford, supra,* and consequently that the judgment in that action was not *res adjudicata* here. Upon the motion for rehearing serious
doubts arose in our minds as to the correctness of this ruling, and so a re-argument of the question was ordered.
Upon this re-argument we are convinced that we were
wrong in our former position upon this question.

The case shows that the parties to this proceeding are

respectively privies in estate to the parties in the case of *Smith v. Ford, supra.* The title of *Smith,* the petitioner here, is derived from J. Maurice Smith, the plaintiff in that case, and the railway company has acquired a license to use the race and roadway for its tracks from the heirs at law of O. B. Ford, the defendant in that case. It is familiar law that the judgment of a court of competent jurisdiction is final and conclusive upon the parties, and all persons claiming under and in privity with them, upon the questions necessarily decided.

The former action of *Smith v. Ford* was an action to remove an alleged cloud upon Smith's title to a large number of parcels of land, including the lots now owned by petitioner and the entire roadway and raceway. Whether it was intended to be a statutory action, under sec. 29, ch. 141, R. S. 1858, or an action *quia timet,* as it existed independently of the statute and recognized in *Pier v. Fond du Lac,* 38 Wis. 470, may be doubtful, but it is immaterial. In either case it was an action of which a court of equity had jurisdiction; and, as remarked in *Grignon v. Black,* 76 Wis. 674, the court must try the question of title if it be disputed. The plaintiff alleged title to the roadway and raceway; the defendant denied it; and upon trial of the issue the court found and adjudged that the plaintiff had title to the lots, but had no title to the road or raceway. That judgment was affirmed in this court, whether rightly or wrongly is immaterial. It was a fact in issue essential to the plaintiff's cause of action, adjudged against him by a court of competent jurisdiction, and must be considered as finally determined between the parties and their privies. Any other rule would emasculate judgments and render litigation utterly fruitless. So far as the decision in *Gray v. Tyler,* 40 Wis. 579, conflicts with this view, we cannot follow it.

The order of the court below must, however, be affirmed, because the petitioner is entitled to have commissioners appointed to assess the damages to the water-power lots without the roadway and raceway in front of them.

*By the Court.*— Order affirmed.