EDWARD AUSTIN, *Appellee,* v. LOUISE BALLARD *et al., Appellants.*

No. 17,018.

SYLLABUS BY THE COURT.

1. JUDICIAL SALES—*Transfer of Bid by Purchaser—Grantee in Sheriff's Deed.* A purchaser of land at a sheriff's sale under a judgment in foreclosure proceedings may transfer his bid, and the sheriff's deed may be made to the transferee.

2. ———— *Omission to Recite Transfer in Deed—Parol Evidence.* Where the interest of a purchaser at a sheriff's sale is transferred to another, to whom the deed is made, and the deed, otherwise in proper form, does not contain a recital of such transfer, the fact may be shown by extrinsic evidence.

3. JUDGMENTS—*Res Judicata.* A party holding title under a sheriff's deed, made to him upon a transfer of the interest of the purchaser at the sheriff's sale, who fails to produce evidence of such transfer, although within his power to do so, and who, because of such failure, is defeated in an action of ejectment brought against a party in possession of the land, is estopped by the judgment from maintaining a new action against the same party upon a new deed based upon the same sheriff's sale and order of confirmation.

Appeal from Meade district court. Opinion filed April 8, 1911. Reversed.

*Francis C. Price,* for the appellants.

*H. Llewelyn Jones,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action of ejectment. The plaintiff, Edward Austin, relied upon a title derived through a sheriff's deed issued to Heber & Emerson upon a sale made in an action to foreclose a mortgage. Defendant Louise Ballard pleaded a former adjudication and title under a tax deed. The plaintiff recovered, and the defendants appeal. The only controversy is between the plaintiff and defendant Louise Ballard.

In a former action between the same parties the plaintiff introduced in evidence a sheriff's deed to himself reciting a sale made in the same foreclosure suit. The defendants then produced the return of the sheriff reciting a sale to Heber & Emerson, plaintiffs in the foreclosure action, and also the order confirming the sale and directing the sheriff to make a deed to the purchasers. On this evidence, on December 16, 1903, judgment was rendered in that action for the defendants. Afterward the plaintiff obtained from Heber & Emerson a quitclaim deed for the land, dated March 29, 1905, and containing the following recitals:

"The said grantors, A. H. Heber and Willis G. Emerson, hereby state and covenant that they are the same parties who, as plaintiffs, commenced a suit to foreclose a mortgage on said land under the firm name of Heber & Emerson, as partners, against Henry J. Atchison and wife, on June 21, 1889, in the district court of Meade county, Kansas; that in said cause, on March 10, 1890, an order of sale was issued under the decree therein rendered, directing the sale of said land to satisfy the mortgage debt; that the return of the sheriff on said order of sale shows that said land was sold to the plaintiffs in said cause, being the grantors herein, but the sheriff's deed thereafter issued on February 7, 1891, conveying said land to Edward Austin, who was in fact the real purchaser thereof, and entitled to such deed, and said land was not in fact intended to be sold or conveyed to these grantors and this conveyance is hereby made for the purpose of correcting the records in said cause in such respect and in

confirming and establishing the title of the said Edward Austin under his sheriff's deed."

On March 27, 1906, on motion of the plaintiff in this action, an order was made in the foreclosure suit directing the sheriff to make a deed of the premises to Heber & Emerson, which was done.  Thereupon Heber & Emerson executed another quitclaim deed to the plaintiff, after which this action was commenced.

It will be observed that the first sheriff's deed recited a sale to Austin, the plaintiff, and the second sheriff's deed recited a sale to Heber & Emerson, and they were named as grantees therein.   Defendant Louise Ballard contends that the plaintiff's title was adjudicated in the former action.   The plaintiff insists that he did not have the title at that time, but acquired it afterward, and that therefore the former judgment is not a defense.   The question is whether the plaintiff is estopped by the judgment of December 16, 1903.

If the recital in the first quitclaim deed is to be taken as true the sale was really made to the plaintiff, and the record ought to have been amended to show that fact and then the sheriff's deed would have appeared regular.   But in an affidavit filed in support of the motion for a new deed the sheriff testified that the sale was made to Heber & Emerson, and that the deed was made to Austin at the request of their attorney.   In his opening statement of the plaintiff's case, on this trial, the plaintiff's attorney said:

"But Heber & Emerson bid it in, and the sheriff was ordered to make a deed to the purchaser, Heber & Emerson; by some arrangement between Heber & Emerson and Austin, it was agreed, although that is not in testimony, but that was the fact, it was agreed that the deed should be made direct to Austin, and instead of the sheriff doing what the court ordered him to do and making the deed to Heber & Emerson be made the deed to Austin."

It may be accepted then as true that the bid was in the name of Heber & Emerson, but that they agreed

and directed that the deed should be made to Austin, and it was therefore so made. That they had a right to transfer the interest acquired by purchase under their bid is clear. (*Proctor v. Farnam,* [N. Y.] 5 Paige, 614; *Archer v. Archer,* 155 N. Y. 415; 63 Am. St. Rep. 691, note; 2 Freeman, Exec., 3d ed., § 313; 3 Freeman, Exec., 3d ed., § 328.) It will be presumed that the transfer was made as agreed, but in any event the agreement was carried into effect by causing the deed to be made to the transferee, thus vesting the title in Austin. It was said in *Ehleringer v. Moriarty,* 10 Iowa, 78:

"It is a familiar doctrine and practice that the sheriff may make his deed to a different person from the bidder, when the bidder consents to it. It is a matter of bargain between him and such other." (p. 79.)

In *Voorhees v. The Bank of the United States,* (35 U. S.) 10 Pet. 449, it was said:

"The remaining objection is that the auditors did not make their deed to the person who purchased at the sale under the order of the court. This is a matter entirely between such person and those to whom the deed was made." (p. 478.)

Our statute does not prescribe the form or contents of a sheriff's deed, but such a deed ought, in addition to the matters contained in ordinary conveyances, to include proper recitals showing the proceedings and the authority under which it was made. The usual recitals are stated at length in section 329 of volume 3 of the third edition of Freeman on Executions, where the author says that if the conveyance is to a person other than the purchaser the deed should recite that he has assigned to such person, or otherwise disclose the reason why the purchaser is not named as the grantee. We quote from the same section:

"But except where a contrary rule has resulted from statutory prescriptions, it is probable that each, and possibly that all, of these recitals may be omitted from a deed without destroying its validity. The authority

of the officer to convey depends upon the existence of certain precedent facts. The existence of these facts may be shown otherwise than by the recitals in the deed."

A sheriff's deed is *prima facie* evidence of the legality of the sale and proceeding. (*Shields v. Miller,* 9 Kan. 390; Civ. Code, § 502.) If this *prima facie* case was overcome on the first trial between these parties by the sheriff's return and the order of confirmation, which, however, we do not decide, still the inquiry was not concluded, and the existence of the facts upon which the authority to execute the deed to the plaintiff instead of the persons named as purchasers might have been shown by extrinsic evidence, within the rule just quoted. (*Lessee of Armstrong v. M'Coy,* 8 Ohio, 128; *Jackson v. Pratt,* [N. Y. Supr. Ct.] 10 Johns. 381; *Welsh v. Joy,* 30 Mass. 477.) In the case last cited it was said, by Mr. Chief Justice Shaw:

"But the court are of opinion that those claiming under that deed are not so estopped, that all the facts upon which the power is given to the officer need not be recited in the deed, and that a misrecital of such facts is not fatal." (p. 480.)

Whether the facts should be found as stated in the recitals in the first quitclaim deed or as stated by defendant's attorney in his opening statement and in the sheriff's affidavit, it seems clear that the plaintiff was entitled to the benefit of the sale, although made in form to Heber & Emerson, and that the court might well have ordered a deed to be made to him direct. The fact that the last order directed that the deed should be made to Heber & Emerson may be accounted for by the fact that, having already conveyed any interest they might claim in the land to the plaintiff, a deed to them would accomplish the same purpose. The effect of the judgment in the first action of ejectment, pleaded in bar in this action, must be determined with reference to the actual interest of the plaintiff in the land at that time, and not by his apparent interest, or lack of inter-

est, as appearing from the record then existing. He then claimed to own the land, and this claim is shown by the evidence produced at the trial of this action to have been good—only the record at that time did not fully disclose it. In that situation at the first trial he should have produced evidence of the facts which would have sustained his claim. If advised that further proceedings ought to be taken in the foreclosure suit to show a perfect legal title, they might easily have been taken; both actions were in the same court, and an amendment of the record in the foreclosure suit would have been allowed, probably without delay. (*Longworth v. Johnson,* 66 Kan. 733.) But if delay were necessary in order to give notice, or for any other reason, a postponement of the trial should have been asked for to afford the necessary time.

The plaintiff relies upon the same sale and confirmation now that he relied upon in the former trial. He took nothing under the quitclaim deeds, for whatever interest Heber & Emerson had acquired by the bid made in their name, as the evidence shows, was vested in him before or at the time the first sheriff's deed was made. It is true that the plaintiff was not estopped by the judgment in his first action from asserting an independent title acquired afterward (*Comm'rs of Marion Co. v. Welch,* 40 Kan. 767), but it prevented him from thereafter asserting a claim of title which he held while the action was pending and prior to the judgment. The title now set up is not a new or independent one, and is only confirmatory of the one first relied upon. A multiplicity of suits should be avoided if possible, and a party must present whatever evidence he may have to support his claim, on peril of losing it; and in an action to recover real property he should file supplemental pleadings, if necessary, to avail himself of such evidence. (*Hentig v. Redden,* 46 Kan. 231.) The plaintiff might have shown upon the first trial the facts disclosing his right to have the deed made to himself as grantee when such right was challenged.

The plaintiff's contention that he acquired his title to the land after the judgment in the first action had been rendered can not be sustained, for he held the title at that time. The judgment in the first action in ejectment is therefore an estoppel in the present case. If the court erred in that judgment the estoppel is nevertheless complete, as it remains unreversed. (*Manley v. Park*, 62 Kan. 553.)

The sufficiency of the tax deed need not be considered.

The judgment is reversed and the cause remanded, with directions to render judgment for the defendants.