Weber, Appellant, vs. Sunset Ridge, Inc., and another, Respondents.*

*February 7—March 8, 1955.*

* Motion for rehearing denied, without costs, on May 3. 1955.

121

122

For the appellant there was a brief by *Vaudreuil &amp; Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

For the respondents there was a brief by *Hammond &amp; Hammond* of Kenosha, and oral argument by *Walter W. Hammond.*

GEHL, J. There is presented upon this appeal the question whether the judgment entered in the prior action bars the present action.

When plaintiff was summoned in the prior action she was called upon to meet the allegations of the complaint, to assert any defense which she might have had, and to challenge the correctness of any claim of legal right made by plaintiff. If at that time she had or claimed to have had any legal interest in the lots the judgment is conclusive and bars the claim now asserted by her. *Cohan v. Associated Fur Farms, Inc.,* 261 Wis. 584, 53 N. W. (2d) 788; *Smith v. Chicago, M. & St. P. R. Co.* 83 Wis. 271, 50 N. W. 497, 53 N. W. 550.

Plaintiff urges that she then had no interest in the lots, and that she acquired none until 1949 when, after judgment in the prior action, she became the owner thereof by virtue of the deeds obtained from her brothers. To that contention defendants reply that she acquired nothing by the deed which she obtained from her brothers; that what they purported to convey to her was in fact already hers and was hers at the time of the disposition of the prior action.

In support of that contention defendants rely upon the testimony of plaintiff that in 1933, when Hillcrest conveyed to the brothers, she, rather than the brothers, became the true owner of the lots; that the brothers "did not pay a dime for the deed;" that she was the only party in interest; that she paid $7,000 of her own money for the conveyance; that she was in fact the real purchaser and had the deed placed in the names of her brothers for some reason of her own; that the deed was signed by her as secretary of Hillcrest.

We are of the opinion that in 1940, at the time of the first quiet-title action, plaintiff had no interest in the lots and that she had or acquired none until 1949 when her brothers conveyed to her. Defendants contend that, upon the basis of plaintiff's own testimony, it should be determined that when the brothers obtained the deed in 1933 a constructive trust for her benefit was created. Unless the brothers were unjustly enriched at the expense of the plaintiff as a

result of that transaction it may not be said that a constructive trust was created.

"The underlying principle of a constructive trust is the equitable prevention of unjust enrichment. . . ." *Masino v. Sechrest,* 268 Wis. 101, 107, 66 N. W. (2d) 740.

"A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it." 54 Am. Jur., Trusts, p. 169, sec. 219.

The trial court found that she paid nothing for the transfer of the property into the names of her brothers. Unjust enrichment arises when there is receipt by one person from another of a benefit, the retention of which would be unjust. *Federal Corp. v. Radtke,* 229 Wis. 231, 281 N. W. 921. If the brothers received anything without consideration it was not received from plaintiff. She parted with nothing in the transaction with them; they acquired nothing in consequence of her having parted with anything. They were not enriched at her expense. No constructive trust was created.

It must be so held despite the fact that it might be assumed that when the brothers obtained the deed they agreed with their sister that upon her demand they would reconvey to her. 54 Am. Jur., Trusts, p. 171, sec. 221.

Defendants contend, however, that because no action against the brothers is involved, it is not necessary in order to sustain their position that it be determined that a constructive trust was created. It is true that neither in the previous action nor in this action are any rights affecting the interests of plaintiff and her brothers as between themselves involved. But in order to permit the determination that she is barred by the previous action it must still be found that at the time of the disposition of the previous action she had an interest in the lots, regardless of the fact that the brothers

did or did not have an adverse interest therein, which interest she could or should have asserted in that action. An interest in land " 'comprehends . . . every kind of claim to land which can form the basis of a property right.' *Union Trust Co. v. Reed*, 213 Mass. 199, 99 N. E. 1093." *Ornatowski v. National Liberty Ins. Co. of America*, 290 Mich. 241, 248, 287 N. W. 449. The interest must, of course, be an enforceable, legal one. ■ Plaintiff had no such interest in the lots until 1949 when the brothers conveyed title to her.

The effect of the judgment rendered in the prior action must be limited to the title or right of plaintiff as it then stood and is not conclusive as to title and rights subsequently acquired by her. 2 Freeman, Judgments (5th ed.), p. 1507, sec. 714; *Whitney v. Nelson*, 33 Wis. 365. She had no title to the premises in controversy and judgment was given against her "but this did not deprive [her] of the right to acquire a new and distinct title; and, having done so, [she] had the same right to assert it, without prejudice from the former suit, which would have accompanied the title into the hands of a stranger." *Barrows v. Kindred*, 71 U. S. (4 Wall.) 399, 404, 18 L. Ed. 383.

It is said that the judgment is conclusive against plaintiff because the deed which she obtained from her brothers in 1949 only confirmed or constituted formal evidence of the right which she acquired by the brothers' void undertaking to convey to her. Confirmed what? Nothing more than that which could never have been enforced. It confirmed nothing and could be no formal assurance of an interest which never had been acquired.

Much is sought to be made of the fact that the trial court found that the conveyance made to the brothers in 1933 was in effect fraudulent. In that connection it must not be overlooked that this is not an action brought by Hillcrest's credi-

tors to set aside the transfer; nor is it an action brought by Hillcrest to recover property allegedly misappropriated by H. D. Weber or her brothers. The issue is made by persons who had no interest in or claims against Hillcrest at the time of the transfer, who are still strangers to Hillcrest, and who have acquired none of the property of Hillcrest except the interest in the real estate which it still owned when Mr. Taylor received the receiver's and sheriff's deeds heretofore referred to. We know of no rule of law which would permit us to award to a stranger to a transaction property which has been acquired by another by fraudulent means.

The fact that the court made a finding that H. D. Weber had the property under her control at all times is immaterial. In the first place, it is not a finding—it is a conclusion of law which, of course, is subject to review by this court. Our determination, heretofore made, that H. D. Weber had no enforceable claim against the property at the time of the prior action to quiet title disposes of any contention which might be made based upon the court's finding that she had the property under her control herein. As we have pointed out she had no legal control of the property, no claim against it, until she obtained the deed from her brothers after judgment in the prior quiet-title action.

Mr. Taylor testified that when he obtained the receiver's deed in 1939 he knew of the deed which had been given to the brothers. Of course, he still had that knowledge in 1941 when he agreed on behalf of his corporation to a discontinuance of the first quiet-title action as against the brothers. It does not seem likely that, if at that time he considered his corporation to be the owner of the lots, he would have agreed to that procedure. If any assumption is to be made from that fact it must be that at that time at least he recognized that the brothers had acquired an interest in the lots which he could not successfully attack.

At the trial an amended answer was proposed and allowed by the court. Among other things, it was alleged that defendant corporation and its predecessors had been in possession of the real estate involved for more than ten years under color of title thereto. Defendants contend that on that account the complaint should be dismissed. The trouble with that contention is that no finding to that effect was asked for or made. There is, therefore, no basis for a conclusion by this court that the defendants are entitled to relief upon that theory. 3 Am. Jur., Appeal and Error, p. 462, sec. 897. *Fluck v. Meiroff*, 192 Wis. 480, 213 N. W. 474.

Defendants contend, also, that at most the transaction whereby the brothers obtained the deed to the lots constituted no more than the giving of security for the indebtedness represented by the note in the sum of $9,100 and the land contract given by Hillcrest to the brothers at the same time. The action was neither prosecuted nor defended upon that theory. Again, there are no findings which would afford a basis for that conclusion.

In her fourth cause of action plaintiff pleads a contract by the terms of which Hillcrest when it conveyed title to the brothers agreed that it would "permanently maintain general and permanent care of the premises" according to the rules then existing or which might be thereafter adopted for the general management of Hillcrest; that when Sunset acquired its interest in and to the real estate it also acquired approximately $8,000 which was then considered "a perpetual-care fund;" and that by reason of the acceptance of the interest of Hillcrest in and to Sunset's real estate and the perpetual-care fund Sunset has assumed the obligation perpetually to maintain and care for the premises described in plaintiff's third cause of action.

Sunset's answer alleges that at the time it acquired title it also received $7,200 which was then and at the time of trial considered in a "perpetual-care fund" and that Sunset "as-

sumes and is obligated to permanently maintain and perpetually care for the premises" in so far as the income from said fund and from any accretions thereto will maintain the premises.

There is nothing in the record except the pleadings which bears upon this issue. It appears to us from the defendants' answer that there is no dispute as to its obligation to care for all of the lots in the cemetery and therefore plaintiff is entitled to judgment directing maintenance in so far as the fund acquired therefore will permit.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in accordance with this opinion.

MARTIN, J., took no part.

CURRIE, J. (*dissenting*). I respectfully dissent from the opinion of the court herein because I am convinced that the judgment rendered by the circuit court for Kenosha county under date of April 9, 1941, in the prior action to quiet title, wherein Sunset Ridge, Inc., was plaintiff and H. D. Weber was one of the defendants, is *res adjudicata* as to the controversy now before the court in the instant action. Such judgment adjudged Sunset Ridge, Inc., to be the owner of the cemetery lots in parcel No. 2, title to which is at issue on this appeal, and further decreed:

"That the defendant H. D. Weber, also known as Harriet D. Weber, and all persons claiming under her subsequent to the filing of the notice of the pendency of this action, to wit: The 31st day of July, 1940, be and the same are hereby barred from any and all claim of right or title to said premises or lien thereon or any part thereof. . . ."

Whenever title is put in issue and adjudicated, the judgment is *res adjudicata* upon such issue of title in any subsequent action between the same parties, subject to the exception that the defeated party has not subsequent to the judgment acquired a new title, which is *"independent"* of

the interest or claim of title possessed at the time of the judgment, and not merely *"confirmatory"* of such former interest or claim of title. *Austin v. Ballard* (1911), 84 Kan. 619, 114 Pac. 1084; and 2 Freeman, Judgments (5th ed.), pp. 1507, 1509, secs. 714, 715.

It clearly appears from the memorandum opinion and findings of the learned trial court that the conveyance which H. D. Weber received from her two brothers subsequent to the judgment of April 9, 1941, was not *"independent"* of her claim to the lots which she had at the time of entry of such judgment, but was merely *"confirmatory"* thereof. In his memorandum opinion Judge HANSON stated:

"The testimony in this case convinces the court that title to the lots mentioned in the third cause of action herein was placed in the names of William D. Weber and Kurt D. Weber solely as an accommodation for the plaintiff, H. D. Weber, otherwise known as Harriet D. Weber. That no consideration was actually paid for the transfer of title; that title was in effect in H. D. Weber, but was placed in the names of her two brothers solely as an accommodation and for the use and benefit of said H. D. Weber, otherwise known as Harriet D. Weber. That as a result of there being no consideration for the transfer, and by reason of the fact that under the plaintiff's own testimony she admits that it was a family arrangement on her money deals, and that she had control of the property at all times, the plaintiff therefore was the real party in interest in the transaction rather than her brothers; and, further, that the brothers never paid anything to Hillcrest Cemetery Association; and that there is lack of proof of any kind that the plaintiff herein paid any consideration for the transfer of the property into the names of her brothers. That the actual control of the lots was at all times in the plaintiff.

"The court is of the opinion that the transaction of the conveyance to the brothers was in effect fraudulent, designed to create and cover up corporate assets in the hope that the assets might have some value at some future date. *The plaintiff herein had the property under her control at all times,*

*even though title was in her brothers' names, and she could therefore designate who it was to be transferred to and how it was to be handled."* (Emphasis supplied.)

Therefore, when the two brothers conveyed title to the lots to their sister, H. D. Weber, they were merely carrying out the prior verbal agreement which existed between them when the prior judgment of April 9, 1941, was entered. The majority opinion herein brushes this aside as of no consequence on the ground that, as between H. D. Weber and her brothers, such verbal agreement was unenforceable, and states in effect that in order for an interest in lands to be eligible to be barred in a suit to quiet title such "interest must, of course, be an enforceable, legal one." An examination of the authorities convinces me that this is not a correct statement of the law.

In *Pritchard v. Lewis* (1905), 125 Wis. 604, 104 N. W. 989, this court held that an interest in land based upon a mortgage executed by one not the owner of the premises was such an interest as might be barred in a suit to quiet title. Surely such interest was not "an enforceable, legal one." Furthermore, asserted titles not evidenced by any writing have been held to be subject to barring in suits to remove clouds from title. Anno. 78 A. L. R. 24, at pages 57, 58.

Furthermore, the Weber brothers did carry out their verbal agreement and convey title to their sister H. D. Weber. Because of the fact that the agreement was executed, it logically would seem to be immaterial whether or not such verbal agreement was legally enforceable. The apparent title she received by reason of the deed from her brothers was the result of such agreement and not due to some independent act on their part disassociated therewith.

For these reasons the judgment of April 9, 1941, should be held to be *res adjudicata* as to the issue of title raised in

the instant action, and the judgment of the trial court should be affirmed.

I am authorized to state that Mr. Chief Justice FAIRCHILD concurs in this dissent.

The following memorandum was filed May 3, 1955:

GEHL, J. (*on motion for rehearing*). To the end that we be not misunderstood, one statement contained in our opinion should be withdrawn. The statement (p. 126), "the interest must, of course, be an enforceable, legal one" taken out of context and standing alone, may be construed as holding that the interest in land which is to be cut off by application of the doctrine of *res judicata* must be an enforceable, legal one. The rule intended to be expressed is actually contained in a statement preceding that quoted above, " 'an interest in land comprehends . . . every kind of claim to land which can form the basis of a property right' " and the statement following the quotation, "the effect of the judgment rendered in the prior action must be limited to the title or right of plaintiff as it then stood." To avoid the possibility of confusion, the statement referred to is withdrawn.

*By the Court.*—Motion denied without costs.