EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Respondent, vs. DERFUS and another, Appellants.

*September 12—October 9, 1951.*

490

For the appellants there was a brief by *Gruhle, Fessler & Wilkus* of Sheboygan, and oral argument by *Jacob Fessler*.

For the respondent there was a brief by *Nash, Clark, Rankin & Nash* of Manitowoc, and oral argument by *Walter J. Clark*.

BROADFOOT, J. The appellants first contend that there is no evidence of any nature in the record to establish that Henry Derfus was negligent as to control and management of his car, and that the court erred in failing to change the answers of the jury in that respect upon motions after verdict.

There was, as usual, a dispute as to the facts. Hill testified that as he was driving in a southwesterly direction on Highway 141 and was approaching the intersection of that

highway with Highway 42, he saw the Derfus car driving north in about the center of the two highways; that he assumed Derfus was going to continue north on Highway 42 rather than turn into Highway 141; that Hill applied his brakes and turned to his left to avoid a collision but that Derfus swung his car farther to the right and the collision occurred on the easterly side of the highway. His story was corroborated by the testimony of the other occupants of his car. The jury rejected Hill's version of the accident.

The defendant Derfus testified that, as he was traveling in a northerly direction and approaching the "Y," he drove over a knoll or small hill; that his car was about a foot to the west of the center line as he was going over the knoll; that he saw the Hill car when it was about five hundred feet away and turned his car into his proper lane of traffic; that he was traveling at a speed of twenty-five to thirty-five miles an hour, but upon seeing the Hill car he reduced his speed to twenty miles an hour; that the Hill car turned suddenly into his lane of traffic and that he applied his brakes; that the day was clear, the highway was dry, and that his four-wheel hydraulic brakes were in good condition; that the application of his brakes caused skid marks upon the highway for a distance of forty to forty-five feet; that the application of the brakes caused his car to swerve to such an extent that he was afraid his car would overturn; that he released his brakes and traveled an additional distance of fifteen or twenty feet to the point of collision at a speed of ten to twelve miles an hour; that both the back and the front of his car swerved when he had the brakes on.

There was offered and received in evidence a manual published by the motor vehicle department of the state of Wisconsin entitled "Wisconsin Manual for Motorists." This manual indicates that a motorist with brakes in first-class condition would come to a complete stop in twenty-two

feet after applying his brakes when driving at twenty miles an hour.

A traffic officer for Sheboygan county testified that there were skid marks upon the highway parallel to the east edge of the pavement that led up to the Derfus car from a distance of forty-five feet to the south thereof; that they were straight and not weaving, and there was no break between the skid marks and the rear wheels of the Derfus car.

Derfus rather effectively disowned the skid marks described by the officer and repudiated his testimony by insisting that his car swerved violently, both front and rear, and that he released his brakes and thereafter traveled a distance of fifteen or twenty feet. He also changed his story at different times during the trial as to just when the Hill car turned to the east, the distances between the two cars at the time, and the distances traveled by their respective automobiles after the Hill car invaded his line of traffic. His story was inconsistent in many respects.

Disregarding the testimony of Hill and the passengers in his car, the admissions and testimony of Derfus permitted the jury to draw inferences that his speed was much greater than twenty miles an hour and that such speed under the circumstances was causal negligence in respect to management and control, or that if his speed was what he testified to, then Derfus was causally negligent in the manner in which he applied his brakes or in failing to turn to avoid the collision. There was clearly a jury question, and there is credible evidence to support the determination of the jury that Derfus was causally negligent in respect to his management and control of his automobile just prior to the accident.

The appellants next contend that the court erred in allowing interest prior to the time of the verdict; that this is an action in tort, and the damages were not determined or made certain until the verdict was rendered.

The nature of an action by one joint tort-feasor against another for contribution is stated in *Ainsworth v. Berg,* 253 Wis. 438, 445, 34 N. W. (2d) 790, 35 N. W. (2d) 911, as follows:

"With respect to the equitable right to contribution arising in automobile cases, it clearly has its origin in the joint misconduct of the negligent parties at the time of the accident. It remains an inchoate right until such time as one of the joint tort-feasors pays more than his fair share of the total damages resulting from such joint negligence, at which time it ripens into a right to legal action to recover therefor."

In the *Ainsworth Case* the court also quoted from *Western Casualty & S. Co. v. Milwaukee G. C. Co.* 213 Wis. 302, 251 N. W. 491, where the question was thoroughly discussed and determined.

The authority for the allowance of interest under the circumstances here present is found in the case of *Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316, 328, 334, 237 N. W. 277, 240 N. W. 405, where the court said:

"There has been some uncertainty and confusion as to the right to recover interest on unliquidated damages, which are recoverable in actions *ex contractu* or *ex delicto.* . . .

"At all events, after full consideration of the authorities, it is our conclusion that when, because of a breach of contract or a tort, a party is liable and in default in paying for items of damage, the pecuniary amounts of which are liquidable or measurable in money with reasonable certainty, then full compensation will be made only by payment of the money value of such items of damage, including the interest which such an amount of money would presumably have earned in the hands of the party who was deprived of it. He does not receive full compensation for the loss occasioned by the breach of contract or the tort unless he is also compensated for such interest, which is part of his compensatory damages, measured according to a rule of law which courts are bound to apply. It is not in the nature of a penalty which it is discretionary with a jury or judge to impose or to disregard.

He is entitled to recover such interest on all such items of damage from the time that the probable pecuniary amount or money value thereof could have been computed or liquidated to a reasonable certainty by ascertaining the then current market or reasonable value, and the time that payment thereof first became due because of the terms of a contract, or, if none, then because of a demand for payment. If there was no demand made before the commencement of the action, then interest does not begin to run until that time."

The defendants knew the exact amount which was to be paid and which was paid to the injured parties, and plaintiff made demand for contribution upon the defendants both before and after the time of making such payment. The amount was therefore "liquidable or measurable in money with reasonable certainty," and comes within the rule stated in the case above.

*By the Court.*—Judgment affirmed.