Cohan, Plaintiff, vs. Associated Fur Farms, Inc., Defendant: Armour & Company, Impleaded Defendant. [Two appeals.] *

*April 9—June 3, 1952.*

* Motion for rehearing denied, with $25 costs, on September 16, 1952.

586

For the plaintiff there were briefs by *Weinzelbaum & Randolph* of Chicago, Illinois, attorneys, and *Henry C. Friend* and *Harry S. Sicula,* both of Milwaukee, of counsel, and oral argument by *Mr. Friend* and *Mr. Sicula.*

For the defendant there was a brief by *Arnold W. Mulhern* of New Holstein, and *Gold & McCann* of Milwaukee, and oral argument by *Mr. Ray T. McCann* and *Mr. Mulhern.*

For the impleaded defendant there were briefs by *Welsh, Trowbridge, Wilmer & Bills* of Green Bay, and oral argument by *F. W. Trowbridge.*

GEHL, J.   Armour, a processor of food products, on or about February 26, 1947, sold to Associated for use by Associated in the feeding of its own mink and for resale to other mink breeders one hundred sixty-eight boxes of frozen pork livers. It seems to have been understood by all parties that the livers were to be included with other ingredients in the preparation of mink feed. Associated, after mixing the pork livers with other ingredients, fed some of it to its own mink and sold a portion of the mixture to the plaintiff, also a mink breeder.

The plaintiff brought this action against Associated claiming that the pork livers were contaminated as a result of which he sustained the loss of a considerable number of mink. After the interpleader of Armour plaintiff served an amended complaint seeking recovery on account of his loss against both Associated and Armour. Associated in a cross complaint seeks recovery over against Armour in the event that it be held that it is responsible to plaintiff.

In the complaint it is alleged that from February, 1947, to November, 1947, the plaintiff purchased from the defendant certain food mixture containing approximately ten per cent of pork livers; that said mixture was bought for the purpose of feeding it to plaintiff's mink; that Associated knew that the mixture was purchased for that purpose and advised plaintiff as to the proper method of feeding it; that the pork livers were represented by Associated as meat fit for consumption by mink; that plaintiff bought the mixture in reliance upon the skill and judgment of Associated; that as a result of such feeding plaintiff lost a substantial number of mink; that the mixture was unwholesome, contaminated, and diseased and not usable as animal food as warranted by Associated; on information and belief that Associated at the time of the sale of the mixture was aware of, or in the exercise of ordinary care, should have been aware of the condition of the mixture; that plaintiff notified Associated that the mixture had caused loss to him and made demand upon it for reimbursement; that such notice was given by plaintiff after he had ascertained that Associated had recovered damages from Armour on account of the feeding by Associated of the mixture.

After the interpleader of Armour the plaintiff filed an amended complaint, realleging the allegations of the original by reference, and alleging further that on or about April 19, 1949, he first discovered that the livers used by him had been supplied by Armour; that he then notified Associated

that the livers were contaminated and had caused damage to the plaintiff; that he then made demand upon Associated and Armour for compensation for the loss sustained by him as a result of the feeding of the mixture; that Armour had notice that Associated had purchased the pork livers for mink feed and had sold the livers as animal food and particularly as food for fur-bearing mink; that Armour sold the livers as meat which was fit for such purpose; that Associated in reliance upon the skill of Armour as a seller and processor of meats and its warranties relative thereto, used the livers as food for its mink and sold a portion of the mix containing such pork livers to the plaintiff; that plaintiff fed the mixture to his mink as a result of which, and of the contaminated condition of the pork livers, he lost a considerable number of his mink; that by reason of the breach of warranty and "negligent conduct of the above defendant and interpleaded defendant" he has sustained damage in the sum of $50,692.30. Judgment is demanded against both defendants.

## DEMURRER

Armour demurred generally to the amended complaint upon the ground that it fails to allege privity of contract between it and plaintiff. The demurrer was sustained. We construe the amended complaint as pleading a cause of action only for breach of warranty. To permit recovery for breach of warranty by an ultimate buyer against the manufacturer or processor of an article of food there must be privity of contractual relations between them. *Prinsen v. Russos,* 194 Wis. 142, 215 N. W. 905, 22 Am. Jur., Food, p. 890, sec. 103. It is lacking here, and therefore the amended complaint does not state a cause of action for breach of warranty.

Plaintiff contends that he may recover upon the ground of Armour's negligence and cites as authority for his contention such cases as *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157, and *Haley v. Swift & Co.* 152 Wis. 570, 140 N. W. 292. He might recover upon that ground had

he pleaded a cause of action for negligence. To permit recovery by a third person against a manufacturer of food it must be shown that the injury is one which might have been reasonably foreseen by the manufacturer in the exercise of ordinary care. *Hasbrouck v. Armour & Co., supra, Haley v. Swift & Co., supra.* No allegation setting forth such claim is found in the amended complaint. There is no suggestion in the pleading that negligence on the part of Armour is relied upon except the incidental and cursory statement contained in paragraph 12: "That by reason of such breach and *negligent conduct* . . . plaintiff sustained damages." The amended complaint does not state a cause of action for common-law negligence.

Plaintiff contends that he may recover from Armour by virtue of the provision of sec. 97.55, Stats., which provides:

"No person shall sell . . . for use as food, . . . any unwholesome, . . . tainted, putrid, or measly meat, . . . knowing or having good reason to believe that such meat is as above described, . . ."

The statute is not applicable. The term "food" as it is there used means articles "used for food or drink or condiment by man." Sec. 97.01, Stats.

He contends also that the provisions of sec. 94.72 (14) (b), Stats., provide him with a remedy. It is there provided that,

"Any . . . corporation or person who shall sell, . . . or distribute any feeds mixed or adulterated with any substance . . . injurious to the health of livestock . . . shall be deemed guilty of a misdemeanor. . . ."

A violation of the statute is not pleaded. To state a cause of action for violation of the statute it must be alleged that the feeds were "mixed or adulterated" with an injurious substance. There is no allegation in the amended complaint that *Armour* mixed or adulterated the pork livers. The statute affords plaintiff no right to recover.

In his memorandum opinion the trial judge stated "that the demurrer should be sustained without leave of amend-

ment, because the court fails to see where an amendment could alter the facts, which appear to be undisputed." Leave to plead over was not granted. Although there was no appeal from that part of the order the determination is reviewable under the provisions of sec. 274.34, Stats. *Milwaukee County v. Milwaukee Western F. Co.* 204 Wis. 107, 235 N. W. 545.

We consider that if the rule of some of the cases to which we have referred should be extended so as to permit recovery for injury to animals as well as to humans in a negligence action the court should have granted leave to plaintiff to plead over, there was an abuse of discretion which fact is indicated by the reason given for the court's refusal.

In the cases to which we have referred recovery was permitted by a subvendee for the negligence of the manufacturer or processor resulting in injury to man. This court has not been called upon to determine whether that principle should be extended to include damage to animals. The question was not considered in *McAleavy v. Lowe,* 259 Wis. 463, 49 N. W. (2d) 487, as is claimed by plaintiff. A statement contained in *Marsh Wood Products Co. v. Babcock & Wilcox Co.* 207 Wis. 209, 226, 240 N. W. 392, would indicate an inclination to so extend the liability. The court says:

". . . at least where the article, if negligently manufactured, will be imminently dangerous to human safety, the liability should extend to property damage in all cases where a causal connection can be established between the defect which constitutes the article a menace and the property damage."

We do not consider it necessary to conclude that in cases in which danger to human life was involved liability was imposed solely because of the character or subject of the injury. We prefer to read out of them the deduction that recovery should be permitted because the manufacturer was negligent in the performance of a duty imposed by law. When it has been established that the manufacturer has violated

the duty and that his violation has caused injury or damage to the subvendee, there is no logical reason for saying that he may recover for an injury to his person but that he may not for an injury to his animals. *Ellis v. Lindmark,* 177 Minn. 390, 225 N. W. 395. If negligence can be established plaintiff should have recovery from Armour.

We conclude that the trial court properly sustained the demurrer to the amended complaint, but that there was error in the refusal to grant leave to plead over and in entering judgment dismissing plaintiff's amended complaint.

### ASSOCIATED'S MOTION FOR SUMMARY JUDGMENT

Associated moved for summary judgment against plaintiff upon the ground that plaintiff had failed to give timely notice of the breach of warranty. The trial court concluded that the record presented an issue of fact—that it is for the jury to determine whether by its conduct Associated is estopped to assert the defense. The motion was denied. Associated appeals.

According to Cohan he started feeding the food mixture on March 4, 1947, and discontinued its use on April 25, 1947. He sustained some loss of mink in April and May of 1947, some further losses in May and June of 1947, and heavy losses in July, August, and September, 1947. He states in an affidavit that in May or June he brought some dead mink to Associated and that then a Mr. Berenz, manager of Associated, inspected the carcasses. He says further in the affidavit that after his heavy losses in July, August, and September of 1947, he questioned Berenz as to whether the loss could be attributed to the feed mixture and Berenz said, "It can't be the food for they [Associated] were not losing any of their mink." Berenz, at an adverse examination, testified that Cohan had never complained to him that his loss of mink had been caused by the use of food mixture, "that Cohan made no claim of any kind against us in the

year 1947." He testified further that in September, 1947, he (Berenz) knew Cohan was losing mink and that Cohan approached him and asked him whether Associated had lost mink and that he answered "No, not in weeks." Berenz testified also that he had suggested to Cohan that he engage a veterinarian.

On September 8, 1947, Cohan engaged a veterinarian, Dr. McDermid, and in his affidavit states that the veterinarian diagnosed the cause of the loss as salmonella and attributed it to the food. Berenz admitted that during the same month and after Dr. McDermid's report to plaintiff, the latter again spoke to him about his loss and that he told Cohan to "get someone in that knew something about it."

In his affidavit Cohan states that he "had no independent knowledge as to the true cause of the loss and relied on Berenz's assurances" and that he had no means of ascertaining the true cause of the losses until he gathered such knowledge by reading an article in a commercial publication in April, 1949, which apprised him of the fact.

After reading the article and on April 19, 1949, plaintiff's attorneys wrote Associated that he had learned of certain facts from having read the magazine article which reported the result of an action by Associated against Armour; that he had lost some mink as a result of feeding the mixture and advising Associated that they had been instructed to prepare the necessary suit for recovery of the damages sustained and suggested a conference in an effort to settle.

Sec. 121.49, Stats., provides:

"*Acceptance does not bar action for damages.* In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise

or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

The requirement of notice is imposed as a condition precedent to the right of recovery, *Simonz v. Brockman,* 249 Wis. 50, 23 N. W. (2d) 464, 24 N. W. (2d) 409, *Lumbermens Mut. Cas. Co. v. S. Morgan Smith Co.* 251 Wis. 218, 28 N. W. (2d) 343. But there may be estoppel to set up want of notice. *Olson v. Stella Cheese Co.* 254 Wis. 62, 35 N. W. (2d) 220. Where one by statements made "induced another to refrain from doing that which he would have done but for the action of the former" he may be precluded from asserting the other's failure. *Guile v. La Crosse Gas & Electric Co.* 145 Wis. 157, 170, 130 N. W. 234. If the statements and answers made by Berenz in response to Cohan's complaints were such as to lull the former into inaction, and if such inaction resulted from reliance upon the conduct of Berenz, principles of equity should intervene to excuse Cohan's delay.

We conclude that the evidence bearing upon this issue and which we have recited is such as to call for determination by a jury whether the doctrine of estoppel is applicable here.

Plaintiff contends, also, that Associated should be held accountable for violation of sec. 94.72 (14) (b), Stats., quoted above. While it is obvious that the complaint was not drawn with that statute in mind, nevertheless it appears to us that plaintiff has pleaded such violation. He alleges that Associated bought the livers from Armour and *mixed* them with other ingredients for sale to plaintiff and alleges that the mixture was "unwholesome, contaminated, and diseased." We can construe his allegation that as the result of the feeding he lost mink an averment that the mixture was "injurious to the health of livestock."

The answer of Associated sets up sufficient denials of the plaintiff's allegations to create an issue as to whether there

had been a violation of the statute and also contains other denials and allegations which make issues of fact. For instance, it denies on information and belief that plaintiff used the mixture and fed it to his mink, that the mink died as a result of such feeding, and denies the extent to which plaintiff was damaged. It specifically denies that the mixture was contaminated as alleged in the complaint.

It should be observed that there is a difference between the position of Armour and that of Associated—as against Armour it is not pleaded that there was a *mixture* as there is in the allegations against Associated.

There are issues of fact. Summary judgment may not be granted. *Prime Mfg. Co. v. A. F. Gallum & Sons Corp.* 229 Wis. 348, 281 N. W. 697. The court properly denied Associated's motion for summary judgment against plaintiff.

## Armour's Motion for Summary Judgment

On November 25, 1947, Associated commenced an action in the United States district court for the Eastern district of Wisconsin against Armour for the recovery of damages for breach of implied warranty of fitness of the pork livers sold by Armour to Associated. Some of the livers had been fed by Associated to its own mink, and it was alleged that as the result of the diseased condition of the livers Associated had lost some of the animals. Judgment was rendered in favor of Associated on January 24, 1949, and was satisfied on February 21, 1949. The action was brought and recovery was had only for the damages sustained by Associated for the loss of its own mink caused by the feeding of the pork livers.

On or about April 19, 1949, Cohan notified Associated by letter that he was claiming damages for loss to his mink by reason of the feeding of contaminated pork livers. On April 26, 1949, Associated forwarded to Armour a copy of the letter and notified the latter that a claim would be asserted

against it by Associated on account of the claim of Cohan. Associated claims that the letter of April 19, 1949, provided the first notice it had that Cohan had sustained any loss to his mink for which he would make claim against it.

Armour came into this action upon motion for interpleader made by Associated. Associated cross-complained against Armour for judgment over in case judgment was obtained by Cohan against it. The motion for summary judgment was based upon the contention that the judgment rendered in federal court is *res adjudicata* as to the cross complaint.

The recovery of Associated in the federal court action was for breach of warranty. As we have pointed out, Cohan has no cause of action against Armour for breach of warranty. If he may recover from the latter it must be upon the theory of negligence. From this it follows that Associated's cross complaint may not be construed to allege a cause of action for indemnity; if it is required to pay Cohan for breach of warranty it will not have discharged any duty owing by Armour to Cohan.

The judgment obtained by Associated in the federal court is *res adjudicata*. It might, in that action, have recovered all its loss "directly and naturally resulting, in the ordinary course of events, from the breach of warranty," sec. 121.69 (6), Stats., including any loss sustained on account of the resale of the livers to plaintiff.

"A case which has often raised the question of consequential damages is where a buyer who purchases goods with a warranty resells them with a similar warranty and, the goods proving defective, is held liable in damages. Within the rule making notice necessary for recovering consequential damages, where goods are sold with a warranty to a dealer, the seller must be assumed to know the dealer may resell them with a similar warranty to a subpurchaser. Accordingly if this is done and the subpurchaser recovers damages from the original buyer, the latter has a *prima facie* right to recover these damages against the seller who originally sold

them to him. And even though the original buyer has not yet been held liable to the subvendee, the amount of his probable liability may be recovered from the original seller. . . ." 3 Williston, Sales (rev. ed.), p. 377, sec. 614a.

The fact that it might have been difficult in the action in the federal court to establish the extent of its liability to Cohan does not prevent the application of the doctrine. The difficulty may be conceded. But it would not have been impossible. Notice to Cohan of its intention to sue Armour or the offer of his testimony, obtained by means of subpoena, if necessary, would have afforded Associated the means of establishing its probable loss and the extent of its liability to the plaintiff. It appears from the record that Associated had notice that Cohan had suffered loss on account of the feeding of the pork livers. It seems, however, that even if he had not had such notice the judgment entered in the federal court would preclude recovery upon the cross complaint.

"That a single or entire demand cannot be split so as to constitute the basis of more than one suit, and that the recovery upon any part of such demand merges the whole and bars another action for the remainder, is not disputed, . . ." 2 Freeman, Judgments (5th ed), p. 1255, sec. 596.

"In harmony with the general rule already stated, the fact that the damages sought to be recovered in the second action had not become apparent when the former judgment was obtained does not take the case out of the rule against splitting indivisible demands." Ibid., p. 1261, sec. 599.

It is apparent, therefore, that the matter of Cohan's claim against Associated and Armour's liability to the latter on that account could have been litigated and determined in the federal court action.

"The final adjudication is conclusive, in a subsequent action between the same parties, as to all matters which were litigated or which might have been litigated in the former proceedings." *Werner v. Riemer*, 255 Wis. 386, 403, 39 N. W. (2d) 457, 39 N. W. (2d) 917.

The judgment bars the claim of Associated now asserted in its cross complaint.

"A final valid judgment on the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action; identity of the thing sued for, of the causes of action, of the parties to the action, and of the quality or capacity in which the parties sue or are sued is essential to the application of the doctrine." 50 C. J. S., Judgments, p. 16, sec. 598.

*By the Court.*—The judgment dismissing the amended complaint of the plaintiff against the interpleaded defendant is reversed with the direction that the order sustaining the demurred be amended by granting plaintiff leave to plead over.

The order denying defendant's motion for summary judgment against plaintiff is affirmed.

The judgment dismissing defendant's cross complaint against the interpleaded defendant is affirmed.

The cause is remanded for further proceedings according to law and this opinion.