NORTHWEST AIRLINES, Inc., a Minnesota corporation

v.

The GLENN L. MARTIN COMPANY, a Maryland corporation.

Civ. No. 9518.

United States District Court
D. Maryland.

April 18, 1958.

Arthur W. Machen, Jr., Baltimore, Md., and Francis D. Butler, St. Paul, Minn. (Joseph France of Venable, Baetjer & Howard, Baltimore, Md., Craig Spangenberg, of Harrison, Spangenberg & Hull, Cleveland, Ohio, and Doherty, Rumble & Butler, St. Paul, Minn., on the brief), for plaintiff.

J. Gilbert Prendergast & Benjamin C. Howard, Baltimore, Md. (Edward D. Crocker and Victor DeMarco, Cleveland, Ohio; Clark, Smith & Prendergast and Miles & Stockbridge, Baltimore, Md.; Arter, Hadden, Wykoff & Van Duzer, and Jones, Day, Cockley & Reavis, Cleveland, Ohio, on the brief), for defendant.

R. DORSEY WATKINS, District Judge.

The Glenn L. Martin Company (Martin), defendant, has moved for summary judgment in its favor in a two-claim cause of action brought by Northwest Airlines, Inc. (Northwest) on the ground that the action was not commenced within time limited by law for the commencement thereof, and that there was in dispute no issue of fact.

Northwest is a common carrier by air. Martin was and is in the business of producing airplanes for sale to common carriers by air, such as Northwest. On August 31, 1946, Northwest and Martin entered into a contract for the manufacture by Martin and the sale to and purchase by Northwest of certain airplanes, including No. 44, the one in controversy. Said contract contained specific provisions with respect to warranties under the caption "Warranty by Martin". Under this section, Martin warranted "all parts, accessories and equipment of each airplane and all spare parts delivered hereunder against failure, under normal use, due to (i) defects in material or workmanship furnished by Martin, (ii) defects arising from Martin's selection of material or process of manufacture, and (iii) defects inherent in design." The warranty section also contained the following pertinent provisions:

"(c) With respect to failures due to defective workmanship or material or due to improper selection of material or process of manufacture, Martin's liability under this warranty is limited to the repair or replacement of any part, accessory or equipment which shall have failed, upon submission of reasonable proof that the failure was due to a matter embraced within Martin's warranty hereunder and upon the return of the defective item, with all shipping charges prepaid, either to Martin's factory at Middle River, Maryland, or if that not be feasible, to a point on NWA's system or to such other place as may be agreeable to Martin and NWA, within six (6) months or two thousand (2,000) flight hours, whichever shall first expire, after delivery of the airplane or spare part to NWA. With respect to failures due to defects inherent in design, Martin's liability under this warranty is limited to the correction, in all the airplanes and spare parts embodying such defective design, of all such defects which shall have become apparent within one (1) year or three thousand (3,000) flight hours, whichever shall first expire, but not less than eight (8) months after the delivery of the airplane or spare part involved. Martin shall make all such repairs, replacements and corrections promptly in order that the airplanes involved may not be kept out of service longer than necessary.

"(d) The warranty set forth in this Section 20 is in lieu of all other warranties, express or implied, arising by law or otherwise; and shall not be extended, altered or varied except by Change Order as hereinabove in Section 9 provides.

"(e) Nothing contained in this Contract, however, shall relieve Martin from liability imposed on it by law for its negligence, if any, in the production or delivery of the items covered by this Contract, provided, however, that the damages recoverable in such case by NWA, or any-one claiming through NWA, shall be limited to (i) damages sustained on account of bodily injuries (including death) and physical injury to or destruction of property, and (ii) damages due to loss of use of (but not to loss of revenue or profits from) each airplane physically injured or destroyed."

On November 8, 1947, plane No. 44 was delivered by Martin to Northwest and accepted by Northwest. On August 29, 1948, plane No. 44 crashed near Fountain City, Wisconsin, causing the death of all passengers and crew. On April 14, 1949, Northwest (later joined by Northwest's insurers) commenced an action against Martin for recovery of damages for the destruction of plane No. 44; for workmen's compensation benefits paid for the death of the crew of plane No. 44; and for loss of use of other planes grounded by Northwest after the loss of plane No. 44.

Between May 24, 1949 and August 24, 1950, claims were made and actions were brought by representatives of passengers on plane No. 44 against Northwest and Martin. From December 28, 1954 to June 29, 1956, settlements of these claims and actions were made by Northwest, with the full knowledge of Martin. Such settlements discharged all liability of Martin to the representatives of the deceased passengers with whom such settlements were made.

On March 4, 1957, the present suit was filed by Northwest against Martin. The gravamen of the complaint, containing two causes of action, is alleged negli-gence on the part of Martin in the production of the airplanes manufactured by it and sold to plaintiff, Northwest, and particularly No. 44, by reason of which said airplane was not suitable for regular passenger service. The complaint contains specific allegations of negligence not here important. The complaint further alleges the bringing of actions in the State of Ohio by the representatives of deceased passengers against Northwest and Martin "jointly or severally for damages resulting from the death of such passengers" and the settlement thereof. "Such settlements were made without any admission that Northwest knew or had reason to know of the defects in the airplane furnished to it by defendant, or that Northwest was in any way negligent * * *."

The complaint further alleges that the amounts in settlement were made in good faith and were reasonable amounts and "discharged all liability of Martin to the representatives of the deceased passengers who were plaintiffs in such actions."

The first cause of action is for the recovery by way of indemnity of the sum of $232,750, representing the amounts paid by Northwest in settlement, with interest from the dates of payment and costs of suit. The second cause of action is based upon the theory that "the negligence of defendant heretofore alleged contributed to the loss of" airplane No. 44 and the death of all the passengers therein. It seeks the recovery of $116,375 or one-half the total settlement figures with interest upon one-half of each settlement from the date of payment, and costs of the suit.

The parties are in agreement that the applicable period of limitations is the three year statute of the forum, Maryland, as embodied in the Annotated Code of Maryland, Article 57, Sec. 1; and see Mandru v. Ashby, 1908, 108 Md. 693, 695, 71 A. 312.[1]

---

1. Presumably Martin has reference to the provisions relating to simple contract; Northwest, to the provisions as to "ac-tions of assumpsit, or on the case * *." As the contract between Martin and Northwest is not a part of the record,

The instant suit was commenced on March 4, 1957, more than nine years after delivery by Martin of plane No. 44 to Northwest; eight and one-half years after the loss of that plane with the death of the passengers and crew; nearly eight years after institution of suit by Northwest against Martin with respect to damages for the destruction of plane No. 44, workmen's compensation benefits with respect to the crew of that plane and for loss of use of other grounded planes; six and one-half years after the filing of the last suit by representatives of decedent passengers in plane No. 44; but within three years of the earliest settlement of any of such death actions.

Martin contends that Northwest's causes of action accrued prior to the settlements effected in 1954, 1955 and 1956. Northwest contends that the causes of action asserted in the instant case did not accrue until Northwest had discharged by payment a primary liability of Martin entitling Northwest to indemnification; or until Northwest, by payment, had discharged more than its proportionate share of the common liability of Northwest and Martin and thereby became entitled to contribution.

Martin claims that granting of its motion for summary judgment is required by Judge Chesnut's decision in this court in New Amsterdam Casualty Co. v. Baker, D.C.D.Md.1947, 74 F.Supp. 809. In that case, the Casualty Company had insured a retailer which had been sued by a customer for damages sustained from an allegedly defective fire-hazardous bathrobe, sold by the retailer to the customer. The Casualty Company settled this suit, and then as subrogee brought an action against Baker, the manufacturer, who had sold the robe in question, along with many others, to the insured retailer. The suit was not for indemnity or contribution, but expressly for breach of the manufacturer's implied warranty of fitness. The suit was brought within one year after settlement of the pur-

chaser's claim, but more than three years after the sale from the manufacturer to the retailer, the sale by the retailer to the customer, and the customer's injuries. A motion was filed to dismiss on the grounds of limitation.

The court found no controlling Maryland decision, and therefore reviewed the general law, which it assumed would be followed by the Maryland Court of Appeals. While expressing sympathy with the contention of plaintiff that limitations with respect to breach of an implied warranty should run only from the time that the ultimate damages are ascertained, the court found the general rule to be that limitations on an implied warranty ran from the breach of warranty, whether or not the damages were then ascertained, or ascertainable. It therefore sustained the defense of limitations, and dismissed the suit.

There can be no doubt that the decision in the Baker case dealt only with the limitation period applicable to breaches of an implied warranty, the term "implied warranty" being used no less than three times in the course of the opinion. Nor would there seem to be any question of the correctness of the decision in the Baker case, which is in accord with the other decisions cited by Martin: John S. Sills & Sons, Inc., v. Bridgeton Condensed Milk Co., 3 Cir., 1930, 43 F.2d 72; Smith v. American Flange & Manufacturing Co., Inc., D.C.D.N.Y.1956, 139 F.Supp. 917, 919; Liberty Mutual Insurance Co. v. Sheila-Lynn, Inc., 1945, 185 Misc. 689, 57 N.Y.S.2d 707, 708, affirmed unanimously, no opinion filed, 270 App.Div. 835, 61 N.Y.S.2d 373; Fred Wolstenholme, Inc., v. Joseph Randall & Bro., Inc., 1929, 295 Pa. 131, 144 A. 909, 911; Woodland Oil Co. v. A. M. Byers & Co., 1909, 223 Pa. 241, 72 A. 518, 520; E. O. Painter Fertilizer Co. v. Kil-Tone Co., 1928, 105 N.J.L. 109, 143 A. 332, 333—all cases involving actions for breach of warranty.

the possible applicability of the twelve year limitation period on a specialty, under Article 57, Sec. 3, is not before the court at this time, but would not affect the result reached herein.

■ But the instant case is not one for breach of warranty. Aside from the provisions in the contract between Northwest and Martin as to the scope and extent of warranty, this suit is by its very terms based upon the liability of Martin as a consequence of Martin's alleged negligence. Such alleged negligence is alleged to have given rise to the deaths of the passengers in plane No. 44 in Wisconsin. Under the complaint, the consequence of Martin's negligence having resulted in casualty in Wisconsin, the law of that State determines the existence, nature and extent of the rights (if any) of Northwest, and the corresponding liability of Martin; it being well settled that the (claimed) right of indemnity or contribution is governed by the law of the place of the tort. 11 Am.Jur. Conflict of Laws, Sec. 14; 15 C.J.S. Conflict of Laws § 12; American Law Institute, Conflict of Laws, Sec. 378; 148 A.L.R. 1130, Conflict of Laws Regarding Contribution Between Tortfeasors; Charnock v. Taylor, 1943, 223 N.C. 360, 26 S.E.2d 911, 913, 148 A.L.R. 1126 (in an accident in Tennessee, where no right of contribution existed, although it did in North Carolina, a third party suit for contribution could not be maintained); Builders Supply Co. v. McCabe, 1951, 366 Pa. 322, 77 A.2d 368, 375, 24 A.L.R.2d 319 (refusing contribution for a casualty in Ohio, which State denied contribution, although Pennsylvania allowed such action); Holstlaw v. Southern Railway Co., D.C.Mo.1949, 9 F.R.D. 276, 277; Renuzit Home Products Co. v. General Mills, Inc., 3 Cir., 1953, 207 F.2d 955, 956; Brady v. Black Diamond Steamship Co., D.C.D.N.Y.1941, 45 F.Supp. 338 (holding that the liability of the parties, joint, sole or derivative, of an accident occurring in Alabama, was to be determined by the law of that State); Geborek v. Briggs Transportation Co., D.C.D.Ill.1956, 139 F.Supp. 7 (holding that under Wisconsin law, the "inchoate right does not become a substantive or enforceable right until" the plaintiff "has paid more than his share of the judgment" ((139 F.Supp. at page 10)) and hence dismissed a third-party claim that if common liability be found, judgment for contribution be entered against the third-party defendant); see also, Malkin v. Arundel Corporation, D.C.Md.1941, 36 F.Supp. 948, 951.

■ Wisconsin has clearly recognized the difference between the nature, and consequence, of a claim for breach of an implied warranty, and a claim based upon negligence. In Cohan v. Associated Fur Farms, Inc., 1952, 261 Wis. 584, 53 N.W.2d 788, Associated had purchased pork livers from Armour & Company, some of which it fed to its own mink, and some of which it sold to Cohan for feeding to his mink. On November 25, 1947, Associated sued Armour in the United States District Court for breach of an implied warranty of fitness. Judgment for Associated was entered on January 24, 1949, and was satisfied on February 21, 1949. That suit was brought, and recovery had, only for damages sustained by Associated from the feeding of its own mink.

On April 19, 1949, Cohan notified Associated that he was claiming damages to his mink from feeding food sold him by Associated. On April 26, 1949, a copy was forwarded by Associated to Armour.

Cohan sued Associated; Associated cross-claimed against Armour for the full amount that might be recovered against Associated in this suit. Armour's motion for summary judgment on res adjudicata was granted. The court said (261 Wis. 596, 53 N.W.2d 794):

"The recovery of Associated in the federal court action was for breach of warranty. As we have pointed out Cohan has no cause of action against Armour for breach of warranty. If he may recover from the latter it must be upon a theory of negligence. From this it follows that Associated's cross-complaint may not be construed to allege a cause of action for indemnity; if it is required to pay Cohan for breach of warranty it will not have discharged any duty owing by Armour to Cohan.

"The judgment obtained by Associated in the federal court is *res adjudicata*. It might, in that action, have recovered all its loss 'directly and naturally resulting, in the ordinary course of events, from the breach of warranty' * * * including any loss sustained on account of the resale of the livers to plaintiff:" (Quoting 3 Williston, Sales, Rev.2d. Sec. 614a).

The court recognized the possible difficulty to Associated in claiming the Cohan damage in its United States District Court suit against Armour, although at that time Associated did know that Cohan had asserted loss from feeding Associated's feed to Cohan's mink. The court, however, relied upon a broader principle, saying (53 N.W.2d 794–795):

"* * * It seems, however, that even if he [sic] had not had such notice the judgment entered in the federal court would preclude recovery upon the cross-complaint."

Wisconsin has also expressly recognized that in suits based upon the defendant's liability to respond to a plaintiff who has been forced to satisfy a third person for damages resulting from defendant's negligence, plaintiff's right arises upon such satisfaction, not upon the accrual of the third party's right of action. This is forcefully demonstrated in the case of Ainsworth v. Berg, 1948, 253 Wis. 438, 34 N.W.2d 790, 35 N.W.2d 911. In that case, the court was required to determine whether or not the provisions of a statute requiring suit, or written notice of injury, within two years of the occurrence of an injury, was applicable to the case of a suit by a defendant against a third party claimed to have participated in such casualty.

In the Berg case, the accident happened on August 17, 1945. The insurance carrier settled the claim made by one of the injured persons, and assigned its subrogation rights to its insured. The insured sued, service being effected upon the defendant and its insurance carrier on August 12, 1947 and August 13, 1947, respectively. On August 27, 1947, defendants moved to implead appellants. "No other notice had been served upon [appellants] and no action had been commenced against them by reason of the accident prior to" August 27, 1947. After a verdict finding both drivers guilty of negligence contributing to the damages, the trial court dismissed the cross-complaint, on the authority of Palmer v. Autoist Mutual Ins. Co., 1940, 234 Wis. 287; 289, 291 N.W. 364. In reviewing and reversing, the appellate court said (34 N.W.2d 793):

"As was said by the court in the Palmer case, supra, there is no provision in the statute requiring one joint tort-feasor to serve notice upon the other. Until suit is brought by the injured party there is no opportunity. It is clear that the statute was not intended to terminate rights of one joint tort-feasor against another, but was directed only at undue delay in commencement of action by injured persons. We are satisfied that the right of one joint tort-feasor against the other to recover contribution is in no wise impaired by the statutory duty placed upon the plaintiff to serve prompt notice of his injuries. The decision in the Palmer case must be overruled."

The court further said (34 N.W.2d 793):

"With respect to the equitable right to contribution arising in automobile cases, it clearly has its origin in the joint misconduct of the negligent parties at the time of the accident. It remains an inchoate right until such time as one of the joint tort-feasors pays more than his fair share of the total damages resulting from such joint negligence, at which time it ripens into a right to legal action to recover therefor."

The court cited, relied upon, and approved, its decision in Western Casualty & Surety Co. v. Milwaukee General Construction Co., 1933, 213 Wis. 302, 251 N.

W. 491. In that case, plaintiff had settled a claim before suit, but before settlement had called upon defendant to contribute to the settlement. In that case the court said (251 N.W. 492):

> "It [the right of contribution] has its inception at the time the negligence of the alleged joint tort-feasors concurs to bring the injuries to the third person.· * * * This inchoate right ripens into a cause of action when one of the joint tort-feasors pays more than his proportionate share of the claim for which all are liable. * * * "

The holding in Western Casualty was reaffirmed in State Farm Mutual Auto. Ins. Co. v. Continental Cas. Co., 1953, 264 Wis. 493, 59 N.W.2d 425, 427:

> "The right of contribution arises from common liability and ripens into a cause of action upon payment by reason of a judgment, or pursuant to a reasonable settlement made with the injured."

As to the Wisconsin law, see also, American Casualty Company v. American Automobile Insurance Company, 1951, 259 Wis. 201, 47 N.W.2d 898 (reaffirming the Berg decision); Employers Mutual Liability Insurance Co. of Wisconsin v. Derfus, 1951, 259 Wis. 489, 49 N.W.2d 400, 27 A.L.R.2d 1264; Hardware Mutual Casualty Co. v. Rasmussen Drug Co., 1942, 261 Wis. 1, 51 N.W.2d 551.

■ That the right of action for indemnity arises at and limitations begin to run from, the time of payment or settlement by the one secondarily liable, and the right of contribution arises at, and limitations begin to run from, the time of payment in excess of plaintiff's proportionate share, is consonant with generally recognized authority. 13 Am. Jur. Contribution, p. 10, Sec. 7; pp. 123–124, Sec. 88; 27 Am.Jur. Indemnity, Sec. 29; 20 A.L.R.2d 925, "Running of Statute of Limitations Against Claim for Contribution or Indemnity Based on Tort" (at page 927):

> "Ordinarily the Statute of Limitations does not commence to run against the right to enforce contribution or indemnity until a cause of action in favor of the person seeking contribution or indemnity arises and the claimant's right of action accrues. The statute commences to run against the claim of the party entitled thereto at, and not until, the time when the event occurs which throws an inequitable share of the common burden or obligation on him—usually the time when payment, discharge, or satisfaction in whole or in part of such obligation is made. The statute does not, therefore, begin to run from the time the common obligation is entered into or becomes due or from the time that judgment is recovered upon it by the obligee, or from the time of demand by the claimant for contribution * * * "

In Consolidated Coach Corporation v. Burge, 1932, 245 Ky. 631, 54 S.W.2d 16, 17, 85 A.L.R. 1086, the court said:

> " * * * An inchoate right of the owner of the bus to enforce its cause of action against the owner of the truck, arose forthwith as an incident, in a sense, to the injured passengers' rights of actions against both owners. As long then as the injured passengers' rights to compensation remained undetermined, the subordinate right of the bus company to contribution continued, and, on payment of the compensation to the injured passengers by the owner of the bus, whether in satisfaction of judgments against it in favor of the injured passengers, or pursuant to a payment on compromises, its cause of action to enforce its right of contribution against the owner of the truck immediately accrued and existed until barred by the statute of limitations. * * "

See also Bair v. Bryant, D.C.Mun.App. 1953, 96 A.2d 508, 510; Brady v. Brady, 1909, 110 Md. 656, 666, 73 A. 567; and

Associated Transport v. Bonoumo, 1948, 191 Md. 442, 447, 62 A.2d 281, 283, where the court said:

> "Ordinarily a right of contribution does not accrue before payment. Williston on Contracts, Rev.Ed. §§ 345, 1278."[2]

A closely analogous problem with respect to the time when an action for indemnity accrues under the Suits in Admiralty Act, 46 U.S.C.A. Sec. 745, was considered at length by Judge Herlands in a carefully reasoned opinion, Hidick v. Orion Shipping & Trading Co., D.C.D. N.Y.1957, 157 F.Supp. 477, at pages 487–488, in which he held:

> "As has already been indicated, the ordinary rule is that a cause of action for indemnity does not arise, by definition, until there has been a judgment entered against or payment by the indemnitee. Thus, 3 Moore's Federal Practice (2d ed. 1948) para. 14.09, pp. 421–422, states:
>
> " 'It should be recognized, however, that the applicable statute is not that which governs the plaintiff's claim against the defendant. If defendant has a claim over against a third-party defendant— *such as a claim for indemnity, contribution, etc.*—the statute usually will not commence to run against the defendant (third-party plaintiff) and in favor of the third-party defendant until judgment has been entered against the defendant, or the defendant has paid the judgment. Thus a defendant may implead a third party to enforce against him a right of contribution, even though the statute may have run on any claim by plaintiff directly against the third party.' " (Emphasis supplied.)

See also Sabat v. Pennsylvania Railroad Company, 1958, D.C.D.N.Y., 157 F.Supp. 325, 327.

The court therefore concludes that this suit has been timely filed; and Martin's motion for summary judgment is therefore denied.

2. There is no inconsistency between this decision and Hahn v. Claybrook, 1917, 130 Md. 179, 182–183, 100 A. 83, L.R.A. 1917C, 1169, cited by Martin in oral argument.